EX PARTE MILES
KINCAID, TRUSTEE, ET AL. *v.* MILES ET AL.
[No. 23, October Term, 1949.]

*Decided November 11, 1949.*

622.

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*William Sinsky* and *Morton H. Perry*, with whom was
*James E. Stansbury* on the brief, for the appellants.

*Edward H. Burke*, with whom were *Bowie, Burke &
Leonard* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

By appropriate proceedings in the Circuit Court for
Baltimore County, Cecelia Kincaid was appointed trus-
tee for Mattie Miles, an incompetent, to investigate and
report on certain claims of fraud raised by the next of
kin. Thereafter, she filed a petition to set aside two
deeds made by Mattie Miles to Joseph A. Miles and
Christine D. Miles, on the grounds of mental incom-
petency, fraud and undue influence. In a previous ap-
peal, (*Jenifer v. Kincaid*, 191 Md. 120, 59 A. 2d 765)
we affirmed an order overruling demurrers to this peti-
tion. The present appeal is from a decree of the chan-
cellor, passed on March 14, 1949, after answer and a
full hearing on the merits, which sustained the validity
of the deeds, but impressed with a trust the remainder
interest of the appellees in the property no. 2620 Wind-
sor Road for the benefit of the incompetent, and, with
the consent of the appellees, directed that they execute
a deed of trust covering a 180 acre farm on My Lady's
Manor, previously deeded to them by Mattie Miles. This
deed of trust was duly executed and recorded. Under
it the trustee, H. Courtenay Jenifer, was authorized
to use the income, and so much of the principal as might
be necessary, for the support of Mattie Miles, with re-

mainder to the appellees. Mrs. Kincaid, the original trustee, entered an appeal. On the same day, upon petition, Mrs. Kincaid and the other nieces and nephews of Mattie Miles, constituting her heirs at law and next of kin, were permitted to intervene as parties plaintiff for the purpose of taking an appeal, and filed an appeal.

At the argument in this court it was formally suggested that Mattie Miles had died on July 27, 1949, after the passage of the decree appealed from, and H. Courtenay Jenifer, committee of the estate of Mattie Miles, trustee under the deed of trust of the farm, and executor under her probated will, was made a party as executor and submitted the case to the determination of this court upon the record. Code, Article 5, § 81. All of the parties having an interest in the subject matter are before us. The validity of the will of Mattie Miles, which devised and bequeathed all her property to the appellees, is not in issue. Technically, of course, the heirs at law have no standing to contest the *inter vivos* disposal of the remainder interests unless the will is set aside. But on the other hand, the quantum of the estate passing under the will depends upon the validity of the deeds. It would serve no useful purpose to have that question retried under the circumstances.

The testimony was voluminous, but may be briefly summarized. Mattie Miles lived on the farm at My Lady's Manor for 77 years with her immediate family. After her father and mother died, she kept house for her unmarried brothers, Will and George. Will died about 1934 and thereafter Mattie and George lived on the farm until his death on July 25, 1943. On April 5, 1934, George, who then owned the farm, had it conveyed to himself and Mattie as joint tenants. Upon his death it passed to Mattie as survivor. He also left personal property amounting to about $26,000, and two small farms in Harford County. At the time of his death, Mattied owned 30 shares of stock in the Sparks Bank, a savings account of $5,500 and $2,200 in Federal farm mortgage bonds.

Letters of administration were taken out on August 2, 1943, by Mattie Miles and her niece, Mrs. Hanna, the daughter of her deceased sister, Mrs. Troyer. Mr. Lawrence E. Ensor appeared as their attorney. On the following day, Mattie Miles went alone to the office of Mr. H. Courtenay Jenifer, and executed a will in favor of her cousin Joseph A. Miles and Christine D. Miles, his wife. She told him she was on good terms with her niece, Mrs. Hanna, and Mrs. Hanna's two sisters and brother, but stated that she had a deep affection for Joseph, who had been virtually brought up on the farm and spent his vacations there, and that she had seen more of his wife than of any other woman. She also said she wanted Mr. Jenifer to represent her and to serve as administrator of George's estate in her place. On the following day she went with Mr. Jenifer to the Orphans' Court to accomplish this. Notice was duly published on August 6, 1943.

After George's death, Mrs. Hanna and Joseph Miles stayed at the farm with Mattie. On the Sunday following the publication of the notice, there was a family gathering at which the nephews and nieces bitterly assailed Mattie for employing Mr. Jenifer, and charged her with appropriating some of George's cash and securities. It also appeared that Mrs. Hanna had used some money, claimed by Miss Mattie to be her own, to pay George's funeral bill. Christine stayed at the farm with Mattie until some time in September, when they went to Joseph Miles' home in Baltimore on Asquith Street, occupied by Mr. and Mrs. Miles and their daughter and son-in-law.

Mattie Miles was not satisfied with their somewhat crowded surroundings and began looking for a house and lot in the suburbs. After looking at a number of houses, she personally negotiated for and purchased a larger house on Windsor Road for $7,500. This property had been offered for sale at $12,000. She had Mr. Jenifer prepare a deed, taking title in her name, for life, with remainder to Mr. and Mrs. Miles, on December 17, 1943.

Shortly thereafter, they moved into the property. The testimony leaves no doubt that Mattie was happy in these surroundings and received the best of care and attention from Mrs. Miles, and her daughter, down to the time of her death. At about this time Mattie instituted a suit for the sale of George's farms in Harford County. On May 25, 1944, she testified as the sole witness as to pedigree and the necessity for sale. Subsequently, she had an offer of $15,000 for her farm at My Lady's Manor. She refused to sell, and insisted to Mr. Jenifer that she wanted to deed the farm to Joseph and his wife. Mr. Jenifer advised against this, but after numerous conferences, and letters on the subject, he prepared a deed which she executed on February 19, 1946, without the knowledge of the grantees. Unless the testimony of Mr. Jenifer, the real estate agents, and all the other witnesses who saw her during this period, is to be disregarded, the mental capacity of Mattie Miles cannot be doubted.

On August 16, 1946, Mattie Miles suffered a paralytic stroke. On November 6, 1946, she was examined by Dr. Spear and Dr. Hill, and found to be mentally incompetent. Dr. Spear testified that Miss Miles was receiving the best of care.

The testimony produced to support the charges of mental incompetency, fraud and undue influence, at the time the deeds were executed, is extremely scanty. There was testimony to the effect that Mattie Miles was an old-fashioned, quiet and retiring person who seldom left the farm, and left the management of business affairs to her brothers; that she was somewhat eccentric in her dress, indifferent to the affairs of the world, and possessed the mind of a twelve year old child. But as the chancellor stated in his opinion, "whatever her mental qualities in her early life, the evidence is convincing that at the time of the execution of the deeds in question she was in full possession of her faculties and a woman of considerable determination. Her letters alone, legible, clear and well phrased—prove she was

in her right mind. Mr. and Mrs. Miles testified—without objection—that neither of them had the slightest idea of what property Miss Mattie owned or that she had any intention of deeding any real estate to them. In fact, Mr. Miles testified that he had no knowledge of the transfer of the farm to him until he got the tax bill from the collector some time after the recording of the deed. He sent it to Mr. Jenifer thinking that there must have been some mistake and that the tax bill was intended for Mr. Jenifer, who he knew was attending to Miss Miles' business affairs. Miss Miles had the advantage of the independent, disinterested advice of her attorney. * * * Neither Mr. nor Mrs. Miles was ever present when Mr. Jenifer had his conferences with his client. The evidence is undisputed that Miss Miles was not induced to consult Mr. Jenifer by the defendants as charged. Mr. Jenifer had never had any business for Mr. and Mrs. Miles and they did not know him but Mrs. Miles said she had never even heard of him."

The appellants contend, however, that the evidence is sufficient to establish a confidential relation between Mattie Miles and the appellees, and that they have not met the burden of showing that the transactions were both voluntary and fair, citing *Gaggers v. Gibson*, 180 Md. 609, 26 A. 2d 395, and *Mills v. Glenn*, 152 Md. 464, 136 A. 831. The chancellor expressed the opinion that it was doubtful if the association of the defendants, without evidence that Miss Miles received or relied upon any business advice from them, was sufficient to establish a confidential relation, particularly in view of the independent advice she received from her attorney. *Cf. Benedict v. Wareheim*, 187 Md. 150, 157, 49 A. 2d 444, and *Myers v. Myers*, 185 Md. 210, 44 A 2d 455. Nevertheless, in the decree appealed from he found from the circumstances and gave effect to an implied trust, in the case of the Windsor Road property, "to support nurse and provide medical attention for their benefactor until the time of her death", and assumed jurisdiction of the express trust voluntarily created in connection

with the farm property. Support for this action may be found in the recent cases of *Hoffman v. Rickell,* 191 Md. 591, 62 A. 2d 597, *Brandenburg v. Harshman,* 193 Md. 104, 65 A. 2d 906, and *Belote v. Brown,* 193 Md. 114, 128-129, 65 A. 2d 910, 917. The arrangement consummated by the decree cannot be demmed unfair to the incompetent, or improvident. On the contrary, it affords the maximum protection consistent with her manifest desire to provide herself with care and comfort during her life and the devolution of the property remaining at her death to the persons of her choice. As stated in the *Belote* case, *supra,* the appellants "like many expectant heirs, overlook the fact that Mrs. White's property was her own, not theirs." The decree not only provided that the income from all her property should be used for her benefit during her life but the trustee had the power to intrench on the principal. We find no error in the decree.

*Decree affirmed, costs to be paid by the individual appellants.*