MOSEBACH *v.* JENNESS ET VIR.

[No. 126, September Term, 1960.]

*Decided March 7, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Leonard H. Lockhart,* with whom were *Ginsberg & Ginsberg* and *Hyman Ginsberg* on the brief, for appellant.

*William G. Kemp* and *Melvin J. Sykes,* for appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree dismissing a bill to set aside two deeds whereby the title to the complainant's 347-acre farm was conveyed to him and to one of the defendants, Mrs. Jenness, as joint tenants. The theory of the bill was that Mrs. Jenness and her husband had exercised undue influence or duress upon the grantor or, in the alternative, that they stood in a confidential relation to the grantor and that the transaction was unfair and unreasonable. There seems to be no dispute as to the applicable legal principles. The tests of undue influence are clearly stated in *Tracey v. Tracey,* 160 Md. 306, 321, *Piraino v. Betka,* 218 Md. 548, 557, and *Akin v. Evans, Exec.,* 221 Md. 125, 131. The law as to confidential relations has been stated and restated. See *Vocci v. Ambrosetti,* 201 Md. 475, 484, *Masius v. Wilson,* 213 Md. 259, 264, and *Rice v. Himmelrich,* 222 Md. 234, 239. The case turns largely upon questions of fact.

The record shows that Mosebach, a former Army officer and a member of the Maryland bar, resided on the farm which he acquired from his mother in 1950. He had no other property. At that time the farm was heavily mortgaged, operated by a tenant farmer, and produced little income. Mosebach was not in good health and drank to excess. He had no close relatives. He derived some income from practicing law in Elkton and also as a licensed real estate broker. In 1955 he developed a spinal condition that affected his power of locomotion. Upon his return from the hospital at Perry Point, he persuaded Mrs.

Babbel to come to the farm with her children and take care of him. Mrs. Babbel had been deserted by her husband. She performed housekeeping, nursing, and secretarial services without remuneration and even obtained employment and contributed her wages to the maintenance of the household. Mosebach had met Jenness in 1955 and employed him as a real estate salesman. Jenness also assisted Mosebach in title search work and in negotiations for the exploitation of sand and gravel deposits on the farm. In 1957 an agreement was made with the Arundel Corporation for gravel rights for a five-year term, under which Mosebach received $5,000. This sum was applied to interest on the mortgage and the purchase of equipment for and repairs to the farm and farm house. Jenness took charge of farm operations and lived with Mrs. Babbel on the premises, although they were not married until November, 1958. In 1957 Mosebach signed a rather curious agreement to "devise" the farm to Jenness, with a remainder interest to Mrs. Babbel in the "surplus" over a named amount. In January, 1958, Mosebach returned from a third hospitalization, which left him without much use of his legs or control of his bodily functions. He was almost wholly dependent upon Mrs. Babbel for nursing care and upon Jenness for his liquor supply and other services.

A few days prior to April 16, 1958, when the deeds were executed, Mosebach began to suffer from a distended abdomen. According to Mosebach, Jenness insisted that he execute a deed of a half interest in the farm to Mrs. Babbel and refused to let him retire until he did so. Mosebach testified he was intoxicated at the time. Mosebach dictated two deeds, one to a straw man, a well-known Elkton attorney, and a reconveyance to Mosebach and Mrs. Babbel. The deeds were typed by Mrs. Babbel, signed, and recorded the following day. Jenness called a doctor who ordered Mosebach to the hospital where an operation was performed for a ruptured bladder from which peritonitis had set in. Although Mosebach was in great pain, his mental faculties were not affected.

According to Mrs. Babbel and Jenness, the idea of the deeds originated with Mosebach. They were somewhat corroborated by the testimony of an impartial witness to the deeds who tes-

tified that Mosebach was sober on the following morning when he signed the deed and fully aware of what it contained. Cf. *Lynn v. Magness,* 191 Md. 674. The straw party also testified that in June of 1958, after Mosebach returned from the hospital, he joked with him about the kind of warranty clause Mosebach had included in the deeds. Neither at that time nor at any time prior to October, 1958, did Mosebach complain to anyone that he did not understand the legal effect of the deeds or that he had been imposed upon in their execution. Following an unsuccessful attempt to negotiate a new mortgage on the farm, in which the prospective lender imposed a condition that Mrs. Babbel reconvey her interest, Mosebach demanded that she do so, but she declined. The present suit was instituted in January, 1959.

The chancellor, in a careful analysis of the voluminous testimony, found as a fact that the appellant had not met the burden of establishing undue influence or duress. He also found as a fact that a confidential relation was not established; that the appellant was not intimidated or dominated by the appellees; that he attended to his own business affairs, only entrusting to the defendants "errands or duties as prescribed by him." In short, the chancellor, who saw and heard the witnesses, chose to believe the appellees and their witnesses rather than the appellant. We cannot say that he was clearly wrong on either point.

The chancellor further found that even assuming a confidential relation to have existed, the conveyance was not so unfair or unreasonable under the circumstances as to require that it be set aside. He said: "Without reiterating all the testimony, we recall that the plaintiff Grantor has no close relatives who should be the natural objects of his bounty; he was fond of the Grantee and had often spoken of making her children his beneficiaries; he was under considerable obligation to her because she not only kept house for him but devoted her wages to the general household expenses and performed nursing and other personal duties for him which far outweighed the value of the shelter of his house * * *. And it is to be recalled that he only created a joint tenancy with himself."

We may add that according to Mrs. Jenness, Mosebach had

made a bargain with her and had stated on numerous occasions that if she would perform the services for him that she had undertaken and had performed since 1955, as long as he lived, he would see that she and her children were taken care of. Jenness also mentioned the bargain in one of his letters, offered in evidence. She testified to her willingness to perform that undertaking and that Mosebach himself chose the deeds as an appropriate method of carrying out his part of the bargain. While the conveyance of a joint interest as a mere gift might be deemed improvident, *Henkel v. Alexander,* 198 Md. 311, 319, it may have been an entirely reasonable arrangement when viewed as a voluntary bargain. See *Hoffman v. Rickell,* 191 Md. 591, *Brandenburg v. Harshman,* 193 Md. 104, *Belote v. Brown,* 193 Md. 114, and *Kincaid v. Miles,* 193 Md. 620, 626. So long as the grantee is ready and willing to perform, it would not be equitable to set the deeds aside.

For all of the reasons stated we think the decree should be affirmed.

*Decree affirmed, with costs.*