EYLER, ET AL. *v.* SPENCER, ET AL.

[No. 483, September Term, 1965.]

*Decided November 16, 1966.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER and FINAN, JJ.

*Donald M. Smith,* with whom was *A. Earl Shipley* on the brief, for appellants.

No brief and no appearance for appellees.

HORNEY, J., delivered the opinion of the Court.

This suit was filed by seven (Alice G. Eyler and others) of the eight surviving children of Christian G. Wike, deceased, against William M. Spencer, an unrelated friend of the deceased, and the other living child (Edna I. Kries), to set aside a deed from the deceased father (the grantor) to the friend (the grantee) on the grounds that the grantor was not mentally competent to execute the deed and that the grantee induced the execution thereof by artifice and undue influence.

Prior to the death of the wife of the grantor in May of 1960, another daughter, Mary L. Stonesifer, gave up her employment and went to live with and care for her parents. After the death of her mother, the daughter continued to care for her father and in June of 1960 the father caused the property which is the subject of this controversy to be transferred to himself and his daughter Mary as joint tenants. Shortly after the death of his wife, the grantee, who had theretofore frequently called to see the daughter, moved into the Wike home. And when the daughter died in April of 1961, the grantee remained and apparently undertook the responsibility of looking after the grantor until the grantee was hospitalized sometime before Labor Day in 1964. While he was living with the grantor, he did some of the cooking when the housekeeper (whom he paid) was not there to do the cooking and cleaning. He made repairs to the buildings on the property and transacted some business affairs for the grantor. He attended to having the garden plowed and the wood cut and paid for both. And, in addition, he often paid the grocery and coal bills. Although the children visited their father from time to time and also helped to care for him, none of them (except Edna I. Kries) ever stayed overnight.

The grantor died in November of 1964. Except for the reservation of a life estate, he had conveyed all of his real property to the grantee in July of 1961. About a month prior to the execution of the deed, the grantor had transferred his savings account from his name to the names of himself and his friend, but in April of 1963 he substituted two of his daughters (Edna I. Kries and Eva M. Echenrode) for his friend as joint owners with himself.

The grantor was afflicted for at least ten years with arteriosclerosis—a chronic disease of the aged commonly known as

hardening of the arteries—which in its step-like progression in coming and going at intervals, can cause deterioration of mental capacity. Cerebral arteriosclerosis was stated as one of the causes of death.

The medical testimony at the trial was in conflict. Doctor Foard, the family physician, who had seen the grantor several times in 1961, but not professionally, testified that in his opinion he was not mentally competent to execute a deed in July of 1961. Another physician, Doctor Wilkens, who had treated the grantor twice for a sore toe several days prior to the execution of the deed, testified that the grantor was not mentally competent to execute a deed, but she could not say whether he had sufficient mental capacity to understand a deed if it were explained to him. A third physician, Doctor Jennette, who had also examined the grantor a few days before the execution of the deed for the sole purpose of ascertaining whether the grantor was capable of handling his own affairs, testified that although the arteries were getting "a little tough" they were not bad enough to seriously affect his mind. An esteemed attorney, D. Eugene Walsh, Esquire, who had been requested by the grantor, in the presence of the grantee, to prepare the deed, refused to do so, not because he thought the grantor was mentally incompetent, but because he did not think it was right to cut off the children. The testimony of the lay witnesses with respect to the mental condition of the grantor was not particularly helpful. There was no testimony one way or the other as to the mental capacity of the grantor when twenty months later he transferred the savings account then standing in the names of himself and the grantee over to himself and two of his daughters.

As was pointed out in *Marmaduke v. Dyer*, 208 Md. 525, 119 A. 2d 367 (1956), the test of mental capacity is whether the grantor was of sound and disposing mind and capable of executing a valid deed or contract, that is, he must understand the nature of his act, and its effect, the person to whom he means to give his property, the manner in which he disposes of it, and the relative claims of the persons who are or should be the objects of his bounty. And see *Cromwell v. Sharon B. & L. Asso.*, 220 Md. 317, 152 A. 2d 548 (1959), where it was said

that the crucial time concerning capacity is the time of the execution of the deed. Furthermore, when there is a confidential relationship, the rule is that the burden is on the grantee to show that the transfer of the property was the deliberate and voluntary act of the grantor and that the transaction was fair, proper and reasonable under the circumstances. *Masius v. Wilson*, 213 Md. 259, 131 A. 2d 484 (1957); *Rice v. Himmelrich*, 222 Md. 234, 159 A. 2d 647 (1960). See also *Blair v. Haas*, 215 Md. 105, 137 A. 2d 145 (1957); *Mosebach v. Jenness*, 224 Md. 395, 168 A. 2d 182 (1961); *Vogt v. Vogt*, 241 Md. 82, 215 A. 2d 741 (1966). And *cf. Wenger v. Rosinsky*, 232 Md. 43, 192 A. 2d 82 (1963).

In summing up the evidence, the chancellor observed that the grantor instead of stripping himself of all interest in the property had reserved a life estate therein and came to the conclusion, considering the low assessed value of the property and his need for constant care which none of his children had afforded him, that the grantor had not made a bad deal in that besides keeping a place to live, he had acquired someone to take care of him.

On appeal the appellants suggest that the *prima facie* evidence presented by them established that the grantor did not have the necessary mental capacity to execute the deed; that even if the grantor had capacity, the grantee did not meet the burden of showing that the grantor had such capacity at the time the deed was executed; and that the grantee failed to show that the confidential relationship between himself and the grantor had not been abused.

Although stating that the confidential relationship between the grantee and the grantor had the effect of putting on the grantee a duty to show that the transfer was "knowingly and voluntarily" made, the chancellor was of the opinion that the burden of so showing had been met and found that there had been no abuse of confidence on the part of the grantee. We cannot say that the finding of the chancellor, who saw and heard the witnesses and had an opportunity to judge their credibility, was clearly erroneous. Maryland Rule 886 a; *Marmaduke v. Dyer, supra.*

*Decree affirmed; appellants to pay the costs.*