SHUGGARS, ET UX. *v.* BRAKE, ET AL.

[No. 589, September Term, 1966.]

*Decided November 9, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES and FINAN, JJ.

*Charles W. Woodward* for appellants.

*Robert Anthony Jacques* for appellees.

HORNEY, J., delivered the opinion of the Court.

Whether or not the appellees (Philip I. Brake, et ux. and Eugene R. Gaither, et ux.) have an easement by prescription

over a roadway on the land of one of the appellants (Catherine I. Shuggars), is the only question presented by this appeal.

Catherine I. Shuggars, formerly Hager, is the owner of the house and lot [1] located in the Damascus District of Montgomery County, where she now resides with her present husband, William T. Shuggars, and the adjoining one-half acre schoolhouse lot,[2] which she and her former husband acquired from the county Board of Education in 1940. Both lots front on State Route 27 and the school lot is bounded by the easterly line of the Gaither lot. The disputed roadway lies within the bounds of the school lot and extends the whole depth of the lot from the highway to the Gaither lot.

Eugene R. and Mary E. Gaither are the owners of a lot,[3] containing one and one-half acres, located off the state highway at the rear of the school lot. The only access to the Gaither lot from the highway is the disputed roadway along the northerly line of the school lot.

Philip I. and Elaine L. Brake are the owners of two lots or parcels of land,[4,5] containing eight and six-tenths acres in the aggregate, lying to the south and west of the Gaither lot with a narrow strip of land along the northerly line of the Gaither lot (which together with a "deeded" right of way over the Gaither lot extending from the westerly end of the disputed roadway in a northerly direction to the easterly end of the above mentioned narrow strip of land) is used by the Brakes as a roadway to and from their property to the disputed school lot roadway leading to the state highway.

---

1. Designated as "[1]" on the plat accompanying this opinion.

2. Designated as "[2]" on the plat, was conveyed to the present owner and her former husband by deed dated February 26, 1940, and recorded in Liber No. 773, folio 360, of the county land records.

3. Designated as "[3]" on the plat, was conveyed to the present owners by Atsie N. Gaither and others by deed dated July 31, 1944, and recorded in Liber No. 946, folio 153.

4, 5. Designated as "[4]" and "[5]" on the plat, the 7.6 acre parcel having been conveyed to the present owners by a deed (from Edith M. W. Jackson) dated August 4, 1961, and recorded in Liber 2875, folio 514, and the 1 acre lot having been conveyed by a deed (from Della F. Welsh) dated August 3, 1962, and recorded in Liber 2994, folio 108.

On behalf of the appellees (the plaintiffs below), there was testimony by Eugene Gaither to the effect that he and his family had resided on lot "[3]" since 1932; that they acquired title to the property in 1944; that the school lot roadway had always been used as a means of access to the highway and no one had ever told them not to use it; that the road was there when the schoolhouse was in use; that it was the only road in and out of the property and led directly to his house; that when,

at one time, posts were erected across the roadway for the purpose of fencing in animals, he had removed them and resumed using the road; that throughout most of the time he and his wife had resided on the property he had owned an automobile and, except for the last four years, had traveled back and forth over the road; that thereafter he and his wife usually used the roadway on foot; and that friends often picked them up to go for rides in their automobiles.

Mary Gaither also testified that she began to reside on the property when she was married in 1932; that she had used the road continuously both before and after the Hagers bought the school lot in 1940; that she was never told not to use it; and that she never asked permission to use it except on one occasion when she had planned a church social at her house.

Edith M. W. Jackson, the eighty-three year old former owner of the seven and six-tenths acre parcel "[4]" testified that what is now the Brake property was acquired by her mother in 1878; that she remembered the schoolhouse and had used the roadway to go to school; that she and her family had used the road continuously from at least 1907, the year of her marriage, and possibly as early as 1878; that the disputed road was reached by means of the granted right of way over the Gaither lot; that after the house on the property burned down in 1952 or 1953 and she had gone to live with a sister, a nephew had stayed on the property in a house that had not burned until after she sold it to the Brakes; and that she had continued to go back to the property from time to time to see after the chickens and to get different things.

Philip Brake also testified that he acquired parcel "[4]" in August of 1961 from Edith Jackson; that at the time there was a roadway along the east line of the Gaither lot (mentioned in the deed from Atsie N. Gaither to Eugene and Mary Gaither) which he used from time to time after purchasing the property to get to the disputed roadway leading to the state highway; and that while he was never forbidden to use the school house roadway until 1964, he had been informed before buying the property that there was no right-of-way of record across the school lot. After he was forbidden to use the roadway he acquired a right-of-way from lot "[5]" across the adjoining tract

of A. L. Tuckman, which gave him access to the state highway over a more circuitous and unimproved route that is impassable in wet weather. Several photographs taken by Brake from both directions show a well defined and used roadway leading from the highway to the Gaither property.

On behalf of the appellants (the defendants below), Catherine Shuggars testified to the effect that her former husband had made a roadway and put a fence on each side of it; that the conversation she had with Philip Brake in 1964 about the use of the roadway resulted in an altercation between them; and that afterward she threw three cement blocks in the roadway and finally had him arrested for trespassing. She admitted that the roadway was being used by the Gaithers when she and her former husband moved to their home property in 1937.

Oliver Hager, a son of Catherine Shuggars, testified that there were no buildings on the school lot "[2]"; that while there was a roadway along a part of the northerly or far side of the school lot, it was put there by his father as a part of a semi-circular driveway on the rear of both lots which led to a workshop on the home lot "[1]" and then back to the state highway on the southerly side of the residence; that there never was a roadway along the north line until his father constructed the driveway for the use of the home property; and that at one time he had put posts completely across the roadway but that the Gaithers had removed them. He admitted that the roadway was the only one suitable for motor vehicle traffic; and that the Gaithers had used it for that purpose.

William Shuggars testified that when he talked to Philip Brake in 1961 he told him that there was no right-of-way through the school lot; that he and his wife had let the Brakes use the roadway without restrictions until they began widening it in front of the Gaither house; that no trespassing signs were then put up near the entrance; that he had never seen the Gaithers either repair or improve the roadway; and that the Gaithers had three ways of getting out—the present roadway, over the recently acquired Brake easement from lot "[5]" and through the property of the mother of Eugene Gaither situated south of the Shuggars home lot "[1]".

As there is no controversy with respect to the existence of a

right of way across the Gaither lot between the Brake property and the westerly end of the school lot roadway, only the road leading from the state highway to and from the Gaither lot is in ·dispute.

The chancellor found that even though the statute of limitations did not run so long as the Board of Education possessed the servient estate, there had thereafter been sufficient use of the roadway by the appellees for a period of more than twenty years to establish a prescriptive easement. We agree.

The appellants contend that the roadway had not been used for the prescriptive period of twenty years. To support the claim, they rely on the testimony of the owner of the school lot and her son to the effect that the present roadway was not on the lot in 1940 and that the roadway did not come into existence until 1944 or 1945 (about four or five years after the school lot was acquired) when the former husband of the owner built a workshop in the rear of their house and constructed the semi-circular gravel driveway around the workshop back to the highway. To the contrary, the appellees produced testimony showing that the disputed roadway had been continuously used by the Gaithers since 1932 and by the former owner of the Brake property from at least 1907 and that such use had continued without interruption after the Hagers acquired the school lot in 1940 for a period of more than twenty years. The chancellor, who saw and heard the witnesses and had an opportunity to judge their credibility, found that the roadway had been used by the Gaithers as well as the Brakes (and their predecessor in title) for a period of twenty-four years (from 1940 to 1964) and we cannot say that his finding was clearly erroneous. Maryland Rule 886 a; *Eyler v. Spencer,* 244 Md. 454, 223 A. 2d 757 (1966).

In *Clayton v. Jensen,* 240 Md. 337, 214 A. 2d 154 (1965), under facts quite similar to those in the case at bar, the Court (*per* Barnes, J.), in stating that the law in regard to the elements of an easement by prescription is well settled, cited *Potomac Edison Co. v. Routzahn,* 192 Md. 449, 65 A. 2d 580 (1949) and quoted *Condry v. Laurie,* 184 Md. 317, 321, 41 A. 2d 66, 68 (1945), for the proposition that—

> "In order to establish an easement by prescription, it is necessary to prove an adverse, exclusive and uninterrupted use of the way for twenty years. Adverse use means use without license or permission. Where a person has used a right of way for twenty years unexplained, it is fair to presume that the use has been under a claim of right, unless it appears to have been by permission."

Since, on the one hand, there was no substantial evidence that the appellees used the roadway with permission or that they would not have used it in the absence of permission and, on the other hand, there was evidence that they used the roadway openly and continuously for over twenty years, it must be presumed that the use thereof had been adverse. As was said in *Dalton v. Real Estate & Improvement Co.,* 201 Md. 34, 50, 92 A. 2d 585, 593 (1952), "[m]ere failure to protest is not permission but acquiescence."

The further contention that the use was not exclusive lacks merit under the circumstances. The requirement that the use be exclusive simply means that the claim of user must not depend on the claim of someone else. *Lichtenberg v. Sachs,* 200 Md. 145, 155, 88 A. 2d 450, 454 (1952). Even though a claimant may not have been the only user, it is sufficient if he used the way under a claim of right independently of others. *Wilson v. Waters,* 192 Md. 221, 226, 64 A. 2d 135, 137 (1949). The fact that the road was used at times by others than the predecessors in title of the user did not prevent it from being exclusive. See *Clayton v. Jensen, supra,* at p. 344, quoting *Wilson v. Waters. supra,* at p. 229, with approval, where it was said that—

> "We adopt the rule that if a road led at its start only to the premises of the persons using it, such circumstance is sufficient to prove their user under a claim of exclusive right, in the absence of proof to the contrary. If a road, which was started in such manner as to make the user adverse and exclusive, is afterwards enjoyed in common with the public, the user does not lose its exclusive character as the result of the joinder of the public therein."

The appellants also contend that the user in the present case was interrupted. As to the Gaithers, the contention is that the use was interrupted by their ceasing to own an automobile and by the placing of posts across the roadway. Not only did the Gaithers continue to use the way on foot, but friends having automobiles often took them for rides. In any event, ceasing to operate an automobile would have had no effect even in the absence of continued user because their discontinuance of vehicular driving occurred after the statutory period had finally run in 1960. Nor did the abortive placement of posts across the driveway by one who was not an owner of the servient estate, constitute an interruption of its use.

With regard to the Brakes, the contention is that there was a nine-year interruption (from 1952 to 1961) which tolled the statute of limitations. An easement may not be lost unless there is some act clearly and unequivocally indicating an intention to abandon it, and mere non-user is not enough. *Ayres v. Hellen,* 235 Md. 258, 201 A. 2d 509 (1964). There was here no abandonment of the use. That the road was not often used by the former owner during the nine-year period was attributable to the fact that she no longer lived on the parcel of land. To say that the owner had abandoned the use under the existing circumstances would be tantamount to saying that she had abandoned the land. Nor, as was further contended, did the improvement of the roadway by the Hagers in 1944 or 1945 affect the running of the statute. The improvements were made for the convenience of the owners of the servient estate and were not inconsistent with the use of the roadway by the holders of the dominant estate. As the chancellor found, the continued use of the school lot roadway by the former owner of the Brake property after February 26, 1940, for a period of twenty years, had ripened into an easement by prescription in 1960, about eighteen months before the former owner conveyed her property, including the prescriptive easement, to the present owners. We reiterate that the decision of the chancellor was not improper.

*Decree affirmed; appellants to pay the costs.*