**PURCHASE AREA ECONOMIC OPPOR-
TUNITY COUNCIL, INC.,
et al., Appellants,**

v.

**WORKMEN'S COMPENSATION BOARD
et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 6, 1970.

Wesley G. Gatlin, George R. Effinger, Boehl, Stopher, Graves & Deindoerfer, Paducah, for appellants.

Martin Glazer, Thomas R. Emerson, Dept. of Labor, Frankfort, Louis V. Mangrum, Mayfield, Gemma M. Harding, Dept. of Labor, Frankfort, for appellees.

STEINFELD, Judge.

This is an appeal by an employer from a judgment of the Calloway Circuit Court affirming an order of the Kentucky Workmen's Compensation Board. The board found that Roach's "trouble is mental" and that he " * * * had no pre-existing dormant non-disabling disease condition capable of being aroused into disabling reality by subsequent injury." It dismissed the claim against the appellee, Special Fund, and assessed liability for permanent total disability and for medical expenses against the employer. We reverse.

Appellee, Olis Roach age 59, was injured and the driver was killed in a work-connected truck accident while Roach was in the employ of appellant, Purchase Area Economic Opportunity Council, Inc. (hereinafter PAEOC). He sustained a concussion of the brain, a possible fracture to his skull, a head wound and broken ribs. Before the accident he appeared to be in good health, had missed no time from his employment for many months and regularly worked a full shift. He fully recovered from the head wound and the broken ribs but he was never able to return to work. The effect, if any, of the brain concussion, the possible fractured skull, and of the trauma is the subject of this controversy.

In the proceedings before the board Dr. John W. Uzmann, a psychiatrist, stated that Roach was completely and permanently disabled as he was suffering from " * * * a chronic brain syndrome due to a pre-existing dormant, non-disabling arteriosclerotic disease aroused into disabling reality by the physical and emotional trauma of the automobile accident." He deposed that arteriosclerosis is a physical condition which does not cause emotional problems.

The deposition of Dr. Uzmann was in part as follows:

"10. Q. Based on your examination and that revealed by the psychological examination, would you state what, if anything, you found?

A. I feel Mr. Roach is suffering from chronic brain syndrome due to probably arteriosclerotic disease.

11. Q. Do you feel this was aggravated by the recent accident he was in on November 7, 1967?

A. One could presume this process that is taking place in Mr. Roach in his brain, chronic brain syndrome, does not come on as rapidly as one would suppose. I would presume in my opinion he has been suffering from chronic brain disease for a number of years and some type of a dramatic incident, either physical or emotional, could precipitate the condition existing now. The present condition I feel is one of less than marginal functioning in society.

12. Q. Doctor, would you state whether or not it is your opinion that this accident did in this case precipitate his disability?

A. It is my opinion that any type of a physical or emotional trauma could interfere with this person's functioning. One can have an emotional problem such as chronic brain syndrome and function on a very minimal level without any observance from even close relatives unless they are aware of the condition existing. Then from some type trauma, which could be physical or emotional, one completely becomes deteriorated and then the signs and symptoms are marked. They probably existed, but the patient protects himself against the deterioration of the brain until such time as either this is caused by trauma, emotional trauma, or just by continuous old age.

14. Q. I will ask you this, Doctor, Did the patient relate a history to you

that he was involved in an automobile accident?

A. At this time the patient stated he sustained an automobile accident with one of his fellow workers who was driving the car. At this time the person driving the car was killed, and the patient was evidently traumatized physically in the accident. The medical reports I have seen from the doctors who treated him at that time, he had some fractures, but the ones we were concerned with, says possible fracture of the skull. Patient at that time also had broken ribs and nine stitches in his forehead. This information, the fact of the stitches, broken ribs and everything, was not related by the patient. He has vague memory of the accident. This was taken from the medical reports submitted to me at that time. I believe this type traumatic incident where death is incurred and fractures of the skull would in my opinion precipitate any type of a marginal type function the patient was experiencing at this time."

Dr. Arthur L. Robertshaw, also a psychiatrist, said that Roach "* * * was suffering from chronic brain syndrome associated with cerebral arteriosclerosis * * * and that it had little or no connection with any accident he had received." Part of his interrogation was as follows:

"Q. In your opinion, based upon your training and experience of some 30 years, and the examination on two occasions of Mr. Roach, state whether or not in your opinion his present condition is in any way related to or was precipitated by the automobile accident on November 8, 1967.

A. It is my feeling and my impression that his present condition is most likely to be the result of his condtion of generalized arteriosclerosis, and this would, in fact, explain his present symptoms.

Q. Did you find anything in the course of either of your examinations to

indicate that Mr. Roach was suffering from any condition other than cerebral arteriosclerosis that might account for these complaints?

A. No, I did not."

PAEOC's motion to make the Special Fund a party defendant (KRS 342.120) was sustained. The board appointed Dr. Frederick C. Ehrman, a psychiatrist, as the independent examining physician. KRS 342.121. Dr. Ehrman stated that he could not answer the board's questions without further testing, so another psychiatrist, Dr. James E. Adams, was appointed. Cf. Young v. Leigh Coal Company, Ky., 433 S.W.2d 865 (1968). He reported that Roach's functional disability was 85% and said in part:

"The patient at this time is felt to have a brain syndrome or dementia of unknown duration and unproven etiology. * * * The patient does present a history of a pre-existing head injury which may or may not have a causal relationship to his present demented state. If we assume that the patient was in good physical and emotional health and well aware of his environment and able to care for himself as well as his family prior to his alleged accident in November of 1967 and then following his alleged accident he became disoriented with impaired memory, judgment and impoverishment of thinking as well as difficulty with behavior; then it seems reasonable a temporal if not causal relationship to the accident may exist. It is felt that pertinent laboratory studies as well as some special laboratory procedures would be of great benefit in excluding at least many of the causes of dementia."

No other physician testified but the board stated that Dr. Adams' conclusion had ruled out a pre-existing disease condition as a cause of Roach's " * * * disability, leaving trauma as its probable cause." It found that "On November 8, 1967, the plaintiff had no pre-existing dor-

mant non-disabling disease condition capable of being aroused into disabling reality by subsequent injury." Neither the employer nor the Special Fund contends that Roach was not entitled to compensation. The employer argues that it should be apportioned and the Special Fund insists that it should be saddled on the employer.

We do not interpret Dr. Adams' report as the board did but on the contrary conclude that when Dr. Adams said the " * * * pre-existing head injury *may or may not* have a causal relationship to his demented state" he meant that the accident was only a *possible* cause of Roach's condition. (italics ours) Cf. Terry v. Associated Stone Company, Ky., 334 S.W.2d 926 (1960) and Kelly Contracting Company v. Robinson, Ky., 377 S.W.2d 892 (1964).

KRS 342.120(1) (b) provides in part that if "The employe is found to have a dormant non-disabling disease condition which was aroused or brought into disabling reality by reason of a subsequent compensable injury by accident or an occupational disease" the Special Fund may be made a party. Subsection (3) provides:

"If it is found that the employe is a person mentioned in subsection (1) (a) or (b) and a subsequent compensable injury or occupational disease has resulted in additional permanent disability so that the degree of disability caused by the combined disabilities is greater than that which would have resulted from the subsequent injury or occupational disease alone, and the employe is entitled to receive compensation on the basis of the combined disabilities, the employer shall be liable only for the degree of disability which would have resulted from the latter injury or occupational disease had there been no pre-existing disability or dormant, but aroused diseased condition."

Dr. Uzmann expressed the opinion that Roach was totally and permanently disabled as a result of the accident, and that the trauma aroused a pre-existing, dormant non-disabling disease condition. The Spe-

cial Fund insists that this testimony of Dr. Uzmann cannot be the basis for an award against it because of the following:

"Q. Dr. Uzmann if I understand it properly this arteriosclerosis is actually the aging process, is it not?

A. Yes, sir."

It supports this contention by the pronouncement "The Special Fund should not be liable for a person's aging process or for normal wear and tear." Young v. City Bus Company, Ky., 450 S.W.2d 510 (1969). We said in City Bus that the degenerative disc with which the claimant there was suffering "* * * in itself is not a disease condition for which the Special Fund is liable under KRS 342.120." Here although Dr. Uzmann admitted that arteriosclerosis is an aging process he labeled it as a disease condition. It has been so defined in Continental Casualty Company v. Semple, Ky., 112 S.W. 1122 (1908); Willis v. Heath, 21 Tenn.App. 179, 107 S.W.2d 228 (1937) and in Eyler v. Spencer, 244 Md. 454, 223 A.2d 757 (1966), although there are other cases indicating otherwise.

The testimony of Doctor Adams only expressed possibilities and does not overcome the statements made by Doctor Uzmann. "Testimony of defense experts that is essentially non-committal will not justify the rejection of a claim supported by positive medical opinions." Cabe v. Splash Dam By-Products Coal Corp., Ky., 416 S.W.2d 361 (1967). There is nothing in the testimony of Doctor Robertshaw to furnish a basis for imposing liability on either the employer or the Special Fund.

Based upon the opinion of Dr. Uzmann it appears that while the disability of the combined injuries sustained in the accident was temporary in nature a permanent disability was caused and brought about by the arousal of the dormant non-disabling pre-existing disease condition for which the Special Fund is liable. KRS 342.120 (3). The board's assumption that the accident was the sole factor causing the claimant's disability was not supported by medical proof. It cannot stand. Kelly Contracting Company v. Robinson, Ky., 377 S.W.2d 892 (1964) and Terry v. Associated Stone Company, Ky., 334 S.W.2d 926 (1960). The employer has paid or should be required to pay only for that period when Roach was floored by the physical injuries plus medical expenses and the Special Fund should pay for subsequent disability.

The judgment is reversed for further proceedings consistent with this opinion.

All concur.