## SOUTHERN MARYLAND AGRICULTURE ASSOCIATION *v.* MEYER ET AL.

[No. 200, October Term, 1949.]

*Decided July 19, 1950.*

*Motion for rehearing filed August 11, 1950.*

*Rehearing denied October 5, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Hyman Ginsberg,* with whom were *Ginsberg & Ginsberg, John W. Farrell* and *John S. Conroy* on the brief, for the appellant.

*M. Hampton Magruder* and *Ralph W. Powers* for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for Prince George's County, in equity, enjoining interference

with the use of a certain roadway over the land of the appellant, and requiring the appellant to remove obstructions and restore a bridge. The questions presented are whether the appellees acquired an easement by prescription or dedication, and whether there was jurisdiction in equity to decide the disputed question of title.

We find no merit in the contention as to jurisdiction. The authorities were discussed in the recent case of *Potomac Edison Co. v. Routzahn,* 192 Md. 449, 456-8, 65 A. 2d 580, 583, where it was said that the rule requiring resort to an action at law is not inflexible, and that factors such as the possibility of irreparable damage, the lack of reasonable doubt as to the title, and the need for mandatory injunction to afford complete relief, may be taken into account. *Cf. Smith v. Shiebeck,* 180 Md. 412, 24 A. 2d 795.

In the instant case there was abundant proof of continuous user for the statutory period. In 1908 Jacob Meyer, the father of four of the appellees, and some of his neighbors began fording the Patuxent River, by team and on horseback, and crossing the land now owned by the appellant to a county road known as the Bowie Road, and thence to the town of Bowie, where they transacted business, purchased supplies and attended church. In 1919 several of the appellees constructed a bridge over the river and continued to use the road, which had a gravel surface and was generally kept in repair by the appellees, although some surfacing was done by the appellant. In 1926 the appellant erected a new grandstand, which involved a relocation of a portion of the road, but the appellees continued to use it without interruption until May 13, 1949, when barricades were erected. No permission was ever sought from or given by the appellant.

While the appellees could reach Bowie by another road, this alternate route was about three times as long. It was shown that while some of the appellees had, at one time or another, been employed at the track, others had never been so employed.

The chief contention of the appellant is that the adverse character of the user was not established, and that it was in fact permissive, because of the maintenance by the appellant of one or more sliding gates which it maintained on the roadway. But the evidence shows that these gates were never locked and were kept open altogether except during the race meetings held during a period of about twenty-five days a year. Even during race meetings the appellees' use was not forbidden, but the closing of the gates and the posting of a watchman was designed to control the flow of traffic coming to the races. At one time the appellant erected a sign "Road closed—Bridge out of repair," but the chancellor found that this was designed to avoid possible liability to persons injured on the bridge. During the racing season the road was used by as many as one hundred cars a day. The bridge was never impassable, and there was testimony that even during the racing season the appellees were allowed to pass through the gates without question. We think the appellant has not met the burden of showing that the use of the way was by license or permission inconsistent with a claim of right. *Wilson v. Waters*, 192 Md. 221, 227, 64 A. 2d 135, 137; *Cox v. Forrest*, 60 Md. 74, 80. In *Baker v. Frick*, 45 Md. 337, 340, 24 Am. Rep. 506, it was said that "the grant of a right of way * * * does not imply that the grantor may not erect gates at the points where the way enters and terminates." *Easter v. Overlea Land Co.*, 129 Md. 627, 99 A. 893, is distinguishable upon its facts, for there the gates were kept locked, and there was definite evidence of permission. For cases holding that the mere erection of gates, for the greater convenience of the owner's operations and not as a barrier to passage, will not defeat a claim to a prescriptive easement of passage, see *Davis v. Wilkinson*, 140 Va. 672, 125 S. E. 700; *Carpenter v. Stapleton*, 169 Va. 22, 192, S. E. 792; *Chesson v. Jordan*, 224 N. C. 289, 29 S. E. 2d 906; *Hodgkins v. Branchini*, 323 Mass. 169, 80 N. E. 2d 464; note 73 A. L. R. 778, 788, and Tiffany, Real Property, 3d Ed.,

Sec. 812. Indeed, if the right to maintain unlocked gates has been exercised for the statutory period, it has been held that this does not negative, but merely limits the extent of, the adverse user.

The mere fact that patrons of the race track have used the road from time to time does not militate against the appellees' claim of adverse and exclusive user. *Wilson v. Waters, supra.* See also note to this case in 10 Md. L. R. 272. In view of our conclusion on the point of prescriptive right, it is unnecessary to consider whether the evidence would support the chancellor's finding that there was a dedication within the rule laid down in *Smith v. Shiebeck,* 180 Md. 412, 24 A. 2d 795.

*Decree affirmed, with costs.*