684 A.2d 51

**George MAVROMOUSTAKOS, et ux.**

v.

**Anthony G. PADUSSIS, et al.**

**No. 1919, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Nov. 1, 1996.

Peter A. Prevas (Konstantine J. Prevas and Prevas & Prevas, on the brief), Baltimore, for Appellants.

Matt M. Paavola (Paavola & Paavola, on the brief), Baltimore, for Appellees.

Argued before DAVIS and SALMON, JJ., and
THEODORE G. BLOOM, Judge (retired), Specially Assigned.

DAVIS, Judge.

Anthony G. Padussis and Edwards & Anthony Drug Co., Inc. (Padussis), appellees, filed a Complaint in the Circuit Court for Baltimore City for injunctive relief, claiming a prescriptive easement over a paved lot owned by appellants George and Tsambika Mavromoustakos. Following a bench trial, the circuit court (Rombro, J.) found a prescriptive easement as to Mavromoustakos's rear lot, permitting the place-

ment of a dumpster on the servient lot and permitting ingress and egress for delivery of merchandise and trash removal. Mavromoustakos appeals from this judgment. We restate the questions presented as follows:

I. Was the trial court clearly erroneous when it applied the presumption of adverse use under claim of right, thus shifting the burden to appellant to show permissive use?

II. Should Maryland adopt the rule of *Chaconas v. Meyers*, that introducing evidence of "neighborly accommodation" rebuts the presumption of adverse use?

III. Was the trial court clearly erroneous in concluding that Mavromoustakos had failed to carry the burden of proving Padussis's use of the lot was permissive?

We answer all three questions in the negative, and affirm the judgment of the circuit court.

## FACTS

The facts of this case are not disputed by the parties. In 1948, Padussis leased the building at 6510 O'Donnell Street in Baltimore City from the O'Donnell Building Corporation, the owner of both 6510 O'Donnell Street and adjacent buildings at 6500–08 O'Donnell Street. Padussis, a pharmacist, leased the building in order to run his pharmacy. All of these buildings are part of a strip mall shaped like an "L," 6510 O'Donnell Street being within the short side of the "L" and 6500–08 O'Donnell Street comprising the longer side. At the beginning of Padussis's lease, 6510 O'Donnell Street was only 50 feet deep running back from O'Donnell Street, the same depth as the buildings located at 6500–08 O'Donnell Street. In 1950, Nathan Felsenberg and Harry Plissner bought the buildings at 6510 and 6500–08 O'Donnell Street. The property included the vacant lots behind the buildings.

From 1948 to 1953, Padussis would place his trash dumpster on the lot directly behind 6510 O'Donnell Street. The trash truck would access the dumpster from a public alley, entering onto the rear lot. In 1953, Felsenberg and Plissner expanded 6510 O'Donnell Street by increasing its depth from 50 feet to

100 feet. This caused the rear of 6510 O'Donnell Street to abut the rear portion of 6508 O'Donnell Street. Felsenberg had a side door and a basement door built in the wall facing the rear lot of the O'Donnell Street stores, allowing access to the rear lot of 6500–08 O'Donnell Street. Padussis continued to place his dumpster behind 6510 O'Donnell Street as before, but now it rested on the rear lot of 6500–08 O'Donnell Street.

In addition to the dumpster being located on the back lot, delivery trucks delivered store merchandise and pharmacy supplies through the back lot of 6500–08 O'Donnell Street to the side door and basement door of 6510 O'Donnell Street. On at least two occasions, Padussis and another tenant had pot holes in the rear lot repaired while they were repaving the front lot. Padussis testified that he assumed responsibility for keeping the lot clean and swept. He also testified that until he sold his pharmacy in 1970, he would park his delivery van on the lot, and would exit the rear door of his business onto the rear lot between ten and twelve times a day. This pattern, begun in 1953, continued without interruption despite changes in the ownership of both properties. Over the years, different people leased 6510 O'Donnell Street.

On July 31, 1958, Padussis purchased the property, through a corporation, from Felsenberg and Plissner. In the deed, an easement was retained by Felsenberg and Plissner for customer parking in the front parking area of the lot. Nothing in the deed referred to the servient lot. In 1970, Padussis leased the property to Voxakis, one of his employees, when he sold Voxakis the pharmacy business. Voxakis continued to use the rear lot for the dumpster, deliveries, and parking. He testified at trial that these uses were "done from as long as [he] ever worked there," and that he "never gave it a second thought." When asked whether he knew who owned the rear lot, Voxakis testified that he thought the rear lot was a "common ground." He testified that, since 1970, he parked his private vehicle there, like Padussis before him. Voxakis sold the business in 1987 and the new owners of the pharmacy continued to lease the building from Padussis.

In 1964, Plissner, *et al.*, sold 6510 O'Donnell Street to Padussis and sold their undivided one-half interest in 6500–08 O'Donnell Street to Irving Levy. Levy held his interest for 26 years. On May 17, 1990, Mavromoustakos purchased 6500–08 O'Donnell Street from the successors-in-interest to the Felsenberg ownership and Levy. In 1994, Mavromoustakos began to object to the use of the rear lot and in May of that year constructed the fence that is the subject of this dispute.

A friendly relationship existed between Padussis and Felsenberg while Felsenberg owned 6500–6508 O'Donnell Street. Padussis testified at trial that he and Felsenberg would often have coffee at Padussis's pharmacy. He even testified that Felsenberg, an attorney, represented him in a case at one time. Felsenberg installed the basement door of 6510 O'Donnell Street at Padussis's request. Padussis testified, however, that he and Felsenberg never once discussed Padussis's use of the rear lot for the dumpster or for deliveries of merchandise. Similarly, no conversation occurred between Padussis and Levy, the next owner of 6500–08. In fact, there appears to have been little, if any, contact of any kind between Padussis and Levy. At trial, Levy testified that, to his knowledge, he had never met Padussis. He knew nothing about the trap door leading into the lot from 6510 O'Donnell Street, and only vaguely recalled seeing a truck unloading freight in the lot once.

Beginning around 1966, Levy began policing the rear lot. He placed "no parking" signs between 6504 O'Donnell Street and another store, and also between 6506 and 6508 O'Donnell Street. Levy testified at trial that there was never a "parking problem" with the pharmacy at 6510 O'Donnell Street. At about the same time, Levy also required that his tenants in 6500–08 O'Donnell Street place their garbage in the rear lot only on the day of trash pickup and not before. He never said anything to Padussis's tenants about parking or about the dumpster. When asked why he never said anything to Padussis's tenants, Levy replied that

... I wanted to be friendly with my neighbor. I wanted to be accommodating to them and neighborly ...

... [B]eing a businessman, you have to give a little to take a little as far as that's concerned, about the moving of the trash. I didn't want that moving of the trash put in front of the store.

## LEGAL ANALYSIS

 In order to establish an easement by prescription, the user of a part of another's real property must prove an adverse, exclusive, and uninterrupted use for twenty years. *Shuggars v. Brake,* 248 Md. 38, 45, 234 A.2d 752 (1967); *Dalton v. Real Estate Imp. Co.,* 201 Md. 34, 40–41, 92 A.2d 585 (1952); *Condry v. Laurie,* 184 Md. 317, 321, 41 A.2d 66 (1945). "Adverse use means use without license or permission." *Condry,* 184 Md. at 321, 41 A.2d 66. The burden of proof is on the claimant of the easement to show that it has had the character and is of the duration required by law. *Dalton,* 201 Md. at 41, 92 A.2d 585.

## I

 We initially consider when to apply a presumption of adversity to the use of a servient estate. The Court of Appeals, more than 100 years ago, set forth the controlling law:

Where one ... has used a right of way for twenty years unexplained, it is but fair to presume the user is under a claim of right, unless it appears to have been by permission. In other words, the use of a way over the lands of another *whenever one sees fit, and without asking leave,* is an *adverse* use, and the burden is upon the owner of the land, to show that the use of the way was by license or contract inconsistent with a claim of right.

*Cox v. Forrest,* 60 Md. 74, 79–80 (1883) (first emphasis added, second in original). The presumption applies in Maryland only when the use over the twenty-year period is "unexplained"—that is, when the claimant of the easement has used the property as he or she sees fit, without asking for or receiving permission to do so. *Id.* at 79–80. *See Zimmerman*

*v. Summers,* 24 Md.App. 100, 112, 330 A.2d 722 (1975) (asking for permission implies a recognition of the right of the owner to stop the use, thus destroying adversity). Put another way, when a person has used the land of another openly and continuously and without objection for twenty years, it is presumed that the use has been adverse under a claim of right. *Wilson v. Waters,* 192 Md. 221, 227, 64 A.2d 135 (1949).

■ Mavromoustakos argues that Padussis's use over the twenty years was not "unexplained," and therefore the trial court erred in applying the presumption of adversity. Mavromoustakos points to evidence introduced at trial of implied permission as an "explanation" of the use by Padussis. We disagree. When he argues that evidence of implied permission over the course of the prescriptive period constitutes an "explanation," Mavromoustakos misinterprets the meaning of the term as used by the Court of Appeals. As is evident from *Cox* and its progeny, the presumption of adversity and evidence sufficient to rebut that presumption can coexist. The presumption, moreover, can only arise if the use is "unexplained." Were we to adopt Mavromoustakos's interpretation of the word "unexplained," there would be no difference between the circumstances giving rise to the presumption of adversity and the circumstances rebutting it. If an "unexplained" use simply means one for which no permission was ever granted, as Mavromoustakos posits, then rebutting the presumption would be both unnecessary and impossible. To apply the presumption of adverse use at all would require a threshold finding that no permission exists. In short, Mavromoustakos's interpretation would transform the presumption, when it is applied, into an irrebuttable one.

As the Court in *Cox* made clear, and as a century of case law has affirmed, the presumption of adverse use is meant to be rebuttable. As is evident by comparing the first and the second paragraphs in the quoted passage from *Cox,* 60 Md. at 79–80, an "unexplained" use is simply one made by the user whenever he or she sees fit, and without asking leave. It is presumed to be an adverse use unless proven permissive by the servient owner. We take this path based on the particular

language of *Cox* and following case law, despite the proposition in other cases cited by Mavromoustakos that the presumption is inapplicable in the first place when circumstantial evidence showed permissive use. *See Hassinger v. Kline,* 91 A.D.2d 988, 457 N.Y.S.2d 847–48 (2d Dep't 1983); *Stubblefield v. Osborn,* 149 Neb. 566, 31 N.W.2d 547 (1948); *Lunt v. Kitchens,* 123 Utah 488, 260 P.2d 535 (1953); *Nature Conservancy v. Machipongo Club, Inc.,* 571 F.2d 1294 (4th Cir.1978) (applying Virginia law).[1] In Maryland, a trial court does not consider circumstantial evidence of implied permission when deciding whether to apply a presumption of adversity to a use of property by one claiming a prescriptive easement.

In the present case, the use of the vacant lot by Padussis and his tenants has been open, continuous, and exclusive ever since 1948, the year Padussis began to keep his dumpster in Felsenberg's empty lot behind the O'Donnell Street stores. For his use to be exclusive, Padussis must have used the property under his own claim of right, not that of another. *See, e.g., Shuggars,* 248 Md. at 45, 234 A.2d 752 ("The requirement that the use be exclusive simply means that the claim of user must not depend on the claim of someone else"); *Wilson,* 192 Md. at 227–28, 64 A.2d 135 (even in a case where the claimant is but one of many users, the use is exclusive when the claimant performs any "plain, unequivocal act, indicating a peculiar and exclusive claim, open and ostensible, and distinguishable from that of others"). Padussis used the lot for his purposes without asking the permission of the owners. His use never depended on the ability of anyone else to use the lot. It is undisputed that no one objected to Padussis's use of the vacant lot until 1994. In fact, it is undisputed that no conversation regarding Padussis's use of the lot ever took place at all. His use of the lot was unexplained, exclusive, and continuous for the prescriptive period. Under these facts, the trial court was correct to apply the presumption of adverse use.

---

1. Mavromoustakos also cites *Susquehanna Realty Corp. v. Barth,* 108 A.D.2d 909, 485 N.Y.S.2d 795 (2d Dep't 1985). This case dealt with lands held out for public use, and is inapposite here.

## II

Once the presumption of adverse use is applied, a servient owner may rebut it. *Dalton,* 201 Md. at 43, 92 A.2d 585. Mavromoustakos would have us adopt the reasoning of *Chaconas v. Meyers,* 465 A.2d 379 (D.C.1983), decided by the District of Columbia Court of Appeals. In that case, the servient landowner had not objected to the use by another of a part of his yard to access another piece of property. In fact, the servient owner had maintained constant friendly contact with the user and, on several occasions, had restrained his dog so that the dominant user could pass over his property unimpeded. The Court of Appeals, placing great weight on the actions taken by the servient owner, held that such evidence of "neighborly accommodation" was sufficient to rebut the presumption of adverse use. *Id.* at 383.

We decline to adopt this approach for the simple reason that the District of Columbia shifts the burden of persuasion in these cases differently than Maryland. In the District, in order to rebut the presumption of adverse use, the servient owner need only *present* contrary evidence of permissive use, either express or implied. *Id.* at 382–83. Following this presentation, the burden shifts back to the claimant of the easement to prove by a preponderance of the evidence that the use is under claim of right rather than by permission. *Id.* at 383–84; *see also House v. Hager,* 130 Or.App. 646, 883 P.2d 261 (1994) (presumption of adverse use rebutted by any evidence of permission); *Chaney v. Haynes,* 250 Va. 155, 458 S.E.2d 451 (1995) (clear and convincing evidence needed for presumption of adverse use to arise, rebutted by any evidence of permission).

■■■ In Maryland, by contrast, in order to rebut the presumption of adverse use, the servient owner must do more than merely *present* evidence of permission—he or she must *prove* its existence by affirmative evidence. *See, e.g., Dalton,* 201 Md. at 43, 92 A.2d 585; *Southern Maryland Agricultural Ass'n v. Meyer,* 196 Md. 31, 35, 75 A.2d 89 (1950); *Wilson,* 192 Md. at 227, 64 A.2d 135; *Cox,* 60 Md. at 79–80; *Potomac Elec.*

*Power Co. v. Lytle,* 23 Md.App. 530, 535, 328 A.2d 69 (1974); *Zehner v. Fink,* 19 Md.App. 338, 344, 311 A.2d 477 (1973). As in most civil actions, the claimant satisfies this requirement upon a showing that it is more likely than not that the land was used with permission or license. *See Knowles v. Binford,* 268 Md. 2, 298 A.2d 862 (1973). As previous cases have demonstrated, merely presenting "some evidence" of permission will not overcome the presumption of adversity in this State, as it would in the District of Columbia. *See, e.g., Southern Maryland Agricultural Ass'n,* 196 Md. at 35, 75 A.2d 89 (when claimants traveled a road for the prescriptive period, evidence that servient owner of the road maintained sliding gates on it, closed the gates for races to control traffic, and erected a sign saying "Road closed—Bridge out of repair," was not sufficient to satisfy owner's burden of proving permissive use); *Potomac Elec. Power Co.,* 23 Md.App. at 535–37, 328 A.2d 69 (disputed evidence that servient owner told easement claimant, "You can always come through my property," held insufficient to rebut presumption of adverse use); *Zehner,* 19 Md.App. at 344–45, 311 A.2d 477 (evidence that claimants requested permission to use a road after the prescriptive period had run, though relevant in determining the character of the prior use, held insufficient to rebut presumption of adverse use, as was evidence of family relationship). *See also Dalton,* 201 Md. at 44–50, 92 A.2d 585 (family relationship, without more, held insufficient to support a finding that the use at the time was with permission).

In effect, once it is established that a presumption of adverse use applies in Maryland, the burden of persuasion shifts to the servient owner, and remains there. The trial court evaluates the evidence with that in mind. This approach, developed by *Cox* and its progeny, favors the claimant of the easement more than the *Chaconas* approach, and is the settled law in Maryland. We see no compelling reason to substantially alter such a well-settled doctrine, and thus we decline to adopt *Chaconas.*

### III

Mavromoustakos claims that the trial court erred when it would not consider evidence of the servient owner's subjective intent; consequently, the trial court was clearly erroneous in its factual determination that insufficient evidence of permissive use was presented to rebut the presumption of adverse use. We disagree. During the trial, the following exchange occurred during the direct examination of Levy:

Q . . . There was, in fact, a sanitary condition on that rear lot; is that correct?

A Very bad.

Q All right. What, if any, consideration or bearing did that have on the fact that you permitted that dumpster to remain on that lot?

MR. PAAVOLA: Objection.

THE COURT: Sustained.

MR. PREVAS: Okay. Again, Your Honor, the proffer is that he would testify that there were sanitary conditions on that lot, and that he was permitting the dumpster to stay there to facilitate those sanitary problems.

THE COURT: I understand what you are saying, Mr. Prevas. You are asking me to permit him to testify what he thought at the time while he did absolutely nothing about it. He had no conversations with Doctor Padussis but he had in his mind what you are asking him these questions about.

MR. PREVAS: Exactly.

MR. PAAVOLA: Objection, Your Honor.

THE COURT: The Court of Special Appeals will have to tell me that's admissible.

. . . I'll sustain the objection.

In its opinion, the trial court reasoned as follows:

. . . What thoughts the defendant or his predecessors in title may have had in mind in not objecting to the plaintiff's use is not controlling. In *Miklasz v. [G.W.] Stone,* 60 Maryland [Md.App.] 438 [483 A.2d 382 (1984)], the Court said, "Equal-

ly clear is that adverse possession is to be determined by the objective manifestations of the adverse use, not by the subjective intent of the possessor." While the Court of Appeals there talked about the intent of the possessor, this Court believes that that rule obviously should be applied to the owner of the servient tenement also; that is, it cannot be determined by his subjective intent.

■ We disagree with the trial court as to its reasoning, not as to the result. Although in adverse possession cases the subjective intent of the *possessor* is indeed irrelevant, *see Miklasz v. G.W. Stone, Inc.*, 60 Md.App. 438, 443, 483 A.2d 382 (1984), *cert. denied,* 302 Md. 570, 489 A.2d 1129 (1985), the same does not hold true for the servient owner. The crux of both adverse possession and prescriptive easement cases is the notion that it is unfair to deprive a landowner of an interest in property unless he or she has had fair warning of the adverse use of the possessor by way of the visible, open, and continuous use made of the property. Indeed, the state of mind of the servient owner is at the very heart of a prescriptive easement. To hold otherwise would ignore the distinction between "permission" and "acquiescence," a distinction which the Court of Appeals has clearly drawn. *Dalton,* 201 Md. at 50, 92 A.2d 585.

■ With that said, however, it is crucial to distinguish between the relevance of the servient owner's state of mind and the permissible methods of proving that state of mind. Mavromoustakos would have a trial court consider as evidence of permissive intent the owner's retrospective testimony regarding that intent. Evidence of permissive use, however, cannot come from the owner's testimony on the stand regarding what he or she thought of the use at the time. There must be some direct or circumstantial evidence other than the testimony of the owner which indicates a permissive use, for the Court of Appeals held in *Dalton,* 201 Md. at 50, 92 A.2d 585, that "mere failure to protest is not permission but acquiescence." If a servient owner were allowed to testify as to his or her state of mind in the absence of any circumstances or actions corroborating his or her testimony, the *Dalton* holding

would be rendered meaningless. Silence would never be properly interpreted as "acquiescence" because the servient owner would always testify that he or she thought the use permissive at the time. This is certainly the wrong result. *Dalton* clearly holds that when there is *only* a failure to protest, the only possible interpretation of that failure is as acquiescence to the hostile claim of another. *Id.* When silence is accompanied by other circumstances that suggest permission on the part of the servient owner, however, the trial court should consider the circumstances and accord them their proper weight.

During the trial, the court seemed to place great emphasis on the lack of any conversation between Padussis and the servient owners. At one point, the court stated:

> ... I asked Mr. Levy on Thursday whether he had ever had any discussion at all with Doctor Padussis with regard to the dumpsters ... or the trucks going in and out, and he said no ... And based on absolutely no discussion between Mr. Levy—I mean, he has been a very candid witness, and he says I had no discussion whatsoever—I don't see how you can make a case of neighborly accommodation out of that.

Moreover, in its opinion, the court said:

> The evidence is clear and this Court finds as a fact that the plaintiff began using the lot in ways in which he testified without ever having any conversation with either the prior owners, Plissner and Felsenberg, or with their successor in title, Mr. Levy....

> Second ... there is absolutely no evidence before this Court from which neighborly accommodation could be gleaned. As noted before, there was never any conversation between the servient owner over a long period of time and the plaintiff....

> ... [A]gain based on the cases, the burden is on the defendant to show that the original use was a permissive use. There is no such showing in this case. The defendant has failed to carry the burden of showing an original permissive use in the case. There was no discussion by the

defendant or any of his predecessors until the discussion that the defendant testified to in 1994, and by that time the plaintiff's right of user had ripened....

■ We note that the lack of a conversation between Padussis and the servient owners cannot be the *sole* factor for finding an absence of permission, for permission need not be express, but may be implied. *See Hungerford v. Hungerford,* 234 Md. 338, 340, 199 A.2d 209 (1964) (claimant's possession of the property must be unaccompanied by any recognition, express or inferable from the circumstances, of the real owner's right to the land); *Lichtenberg v. Sachs,* 200 Md. 145, 155, 88 A.2d 450 (1952) (acknowledging that permissive use must be determined with reference to all of the circumstances of the case); *Barchowsky v. Silver Farms, Inc.,* 105 Md.App. 228, 242, 659 A.2d 347, *cert. denied,* 340 Md. 301, 666 A.2d 1236 (1995). Padussis is wrong when he asserts that *Dalton* prohibits evidence of implied permission to rebut the presumption of adversity when the use in question began under a claim of right and when the servient owner is silent. In *Dalton,* a path was originally owned by three sisters as tenants in common. Upon the partition of the property, all three sisters continued to use the way without any discussion or permission, each from the others. The Court of Appeals first noted that each tenant in common uses the entire estate under claim of right, and that the adverse character of the use continues after partition, until affirmatively altered. *Dalton,* 201 Md. at 44, 92 A.2d 585. Reciting various cases on the use of a family road that note that the facts of each case control when determining whether use was under claim of right or by permission, the Court then stated that

there is nothing in the case to show or suggest that [appellant] was ever given permission [to use the way] by Mrs. Coursey or the appellee, and nothing indicating that until well after the prescriptive period had run, any denial of a right to use the road was made to Mrs. Dalton by anyone.

*Id.* at 49–50, 92 A.2d 585.

■ Thus, *Dalton* stands for the proposition that when a use begins adversely, i.e., under claim of right, the adversity

continues until permission or denial is communicated in some way. Contrary to Padussis's assertion, however, we find nothing in *Dalton* that requires that such permission be express. Rather, the Court of Appeals held that "*mere* failure to protest is not permission but acquiescence." *Id.* at 50, 92 A.2d 585. It said nothing of the failure to protest combined with other indications of permission. Indeed, the Court, citing *Lichtenberg v. Sachs*, 200 Md. 145, 88 A.2d 450 (1952), made quite clear that the particular facts of each case were of paramount importance. *Dalton*, 201 Md. at 44–45, 92 A.2d 585.

 Nevertheless, the circuit court never ruled explicitly that permissive use may only be proven by evidence of express permission. It ruled, rather, that Mavromoustakos had failed to carry the burden of showing an original permissive use. This was a factual, rather than legal, determination. Given that no discussions ever took place, as the court found, and considering the totality of the circumstances surrounding the use of the lot, *see Lichtenberg*, 200 Md. at 155, 88 A.2d 450, we cannot say that the court was clearly erroneous. In fact, the court was clearly correct. Mavromoustakos merely relied on the fact that Padussis and Felsenberg were on good terms to suggest that Felsenberg permitted Padussis to use the lot. His argument that Levy continued this "permission" consists of Levy's posting of no-parking signs on his own property and regulating his own tenants' garbage disposal. That is simply not evidence that could rebut the presumption of adverse user. In any event, the circuit court was in the best position to evaluate the evidence, and we will not disturb its factual conclusions when those conclusions are supported by competent evidence, as is the case here. RULE 8–131(c); *Mayor and Council of Rockville v. Walker*, 100 Md.App. 240, 256, 640 A.2d 751, *cert. granted*, 336 Md. 354, 648 A.2d 464 (1994).

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**