32 A.3d 527

**John T. TURNER, et ux.**

**v.**

**Donald E. BOUCHARD.**

**No. 1573, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

Dec. 2, 2011.

430

**432**

**434**

Christopher T. Longmore (Dugan, McKissick, Wood & Longmore, LLC, on the brief), Lexington, MD, for Appellant.

V. Charles Donnelly, Solomons Island, MD, for Appellee.

Panel: DEBORAH S. EYLER, MATRICCIANI, CHARLES E. MOYLAN, JR., (Retired, Specially Assigned) JJ.

MATRICCIANI, J.

Appellee, Donald E. Bouchard, filed a declaratory judgment action against his neighbors, appellants, John T. Turner and Marie Turner (collectively, "Turner"), on April 16, 2007 in the Circuit Court for Calvert County. Following a bench trial on April 2, 2008 and April 25, 2008, the circuit court on August 25, 2008 issued an opinion and order holding that Bouchard had a prescriptive easement over a portion of Turner's property and placing various restrictions on the use of the easement. Turner noted timely an appeal to this Court on September 8, 2010.

### QUESTION PRESENTED

Turner presents one question for our review, which we have rephrased as follows: [1]

---

1. The questions presented as originally phrased in Turner's brief are as follows:

1. Did the circuit court err when it expanded an express easement beyond its original scope despite the fact that there is no evidence in the record, or finding by the court, of affirmative evidence of change to an adverse use?

2. Did the circuit court err when it failed to apply the "woodlands exception" to this case when the evidence of the case clearly demonstrates that the property met the criteria for applying this exception?

3. Did the circuit court err when it granted a prescriptive easement depsite [sic] the fact that the appellee did not present evidence to prove the necessary elements of a prescriptive easement?

I. Did the circuit court err in holding that Bouchard has a prescriptive easement over a portion of Turner's property?

For the reasons that follow, we answer no and affirm the judgment of the circuit court.

### FACTUAL AND PROCEDURAL HISTORY

■ The parties to this case own and live on two adjacent properties on Big Bear Lane in the town of Lusby, Maryland. Turner owns 11730 Big Bear Lane ("lot 17") and Bouchard owns 11734 Big Bear Lane ("lot 16"). The back yards of both lots abut Lake Lariat, a man-made lake used by both parties for recreational purposes. It is undisputed that Bouchard has an express easement, granted by a properly recorded deed, over a portion of Turner's property to serve as a driveway for pedestrian and vehicular ingress and egress to Bouchard's property.[2] This case concerns a portion of lot 17 that is outside the boundary of the express easement (the "disputed area").

### *Chain of Title*

Both lot 16 and lot 17 were previously owned by Luther and Dorothy Muth. The Muths improved lot 16 by building a house, a crushed stone driveway, and a concrete retaining wall. A portion of the driveway and retaining wall were located on lot 17, but lot 17 was otherwise unimproved and did not have a house. The Muths sold lot 16 to Bouchard on October 29, 1975. Because the home on lot 16 was within a few feet of the property line, the Muths conveyed by separate recorded deed an express easement across a small portion of

---

**2.** "In every instance of a private easement—that is, an easement not enjoyed by the public—there exists the characteristic feature of two distinct tenements—one dominant and the other servient." *Board of County Comm'rs v. Bell Atlantic–Maryland,* 346 Md. 160, 175, 695 A.2d 171 (1997). Here, Bouchard's lot 16 is the dominant tenement (the estate that benefits from the easement) and Turner's lot 17 is the servient tenement (the estate that is burdened by the easement). *See* Blacks Law Dictionary 589 (8th ed. 2004) (defining "dominant estate" and "servient estate").

lot 17 "to serve as a driveway for pedestrian and vehicular ingress and egress to a portion of" Bouchard's property. Bouchard has owned lot 16 continuously (previously with his wife and now as sole owner) since he purchased it in 1975. From 1975 to 1980 Bouchard used lot 16 "as a recreational place for the family." From 1980 until 1999 Bouchard used lot 16 as a rental property. The house on lot 16 did not become Bouchard's primary residence until 2000.

Turner's parents have owned property in the subdivision since 1963, when they purchased lots 96 and 97. Those lots are also on Big Bear Lane, across the street and around the corner from lots 16 and 17. In 1967 Turner's parents built a cottage on their lots. They initially used the cottage as a vacation home, but moved there full time in the early 1970's. After building the cottage, Turner's parents bought a third lot in the subdivision, lot 18, adjacent to lot 17. Lot 17 was at that time still owned by the Muths.

The Muths sold lot 17 to Bouchard and Turner's parents on December 9, 1980 as tenants in common. On August 24, 1984 Turner's parents bought out Bouchard's interest in lot 17 and became the sole owners of the property. Both the 1980 and the 1984 deeds expressly incorporated the express easement. From 1980 until 2005, Turner's parents used lots 17 and 18 as a recreational gathering point for the family. In 2005, Turner purchased lot 17 from his parents and built a house there.[3]

### The Disputed Area

The express easement is a sixty-one foot, three inch long trapezoid bounded on the south by the property line separating lot 16 from lot 17.[4] At its most intrusive point, the express

---

**3.** The official plat refers to Turner's property as Lot 17R. Lot 17 R is a combination of previously-numbered lots 17 and 18. For the sake of consistency and simplicity, we refer to Turner's property throughout this opinion as "lot 17."

**4.** The complete description of the easement in the 1975 deed from the Muths to Bouchard is as follows:

easement extends northerly into lot 17 eight feet, where it runs parallel to the property line for twenty-eight feet, nine inches. The eastern and western boundaries of the express easement are lines connecting the two parallel sides of the trapezoid at roughly forty-five degree angles to the property line.[5]

The properties share a concrete retaining wall that begins on lot 16, crosses the property line in a north-easternly direction, turns and veers approximately parallel to the property line, and then ends on lot 17. The retaining wall is entirely outside the boundary of the express easement. The disputed area can be most easily conceptualized as two shapes. The western portion of the disputed area is on lot 17 between

An easement for the benefit of and appurtenant to Lot # 16, the dominant tenement, and against Lot # 17, the servient tenement, both Lots situate in Section 2–L of the subdivision known as Chesapeake Ranch Estates as per plat thereof recorded among the Land Records of Calvert County in Plat Book J.B.L. # 1 at page 88, said subdivision being located in the First Election District of Calvert County, State of Maryland.

Said easement is in the shape of a trapezoid and begins at a point on the boundary between Lots 16 and 17 (which boundary is a line running N 52° 00′ E as recorded on Survey and Improvement Location plat prepared for said Lot 16 by J.R. McCrone, Jr., Inc., registered professional engineers and land surveyors, on October 23, 1975, a copy of which is attached), which point is one hundred fifty-three feet nine inches from a pipe which marks the northwest corner of Lot 16 and the southwest corner of Lot 17, hereinafter called the corner pipe, and runs first for nineteen feet three inches in a north-easternly direction to a point which is eight feet from said boundary at right angles to a point on it one hundred seventy-one feet three inches from said corner pipe, thence in a more easterly direction parallel to said boundary for twenty-eight feet nine inches to a point eight feet from said boundary and at right angles to a point on it two hundred feet from said corner pipe, thence in a more easterly direction seventeen feet to a point on said boundary two hundred fifteen feet from said corner pipe, thence southwesterly along the boundary to the starting point at one hundred fifty-three feet nine inches from the corner pipe.

This easement is to grant a right-of-way over land belonging to the grantors herein to serve as a driveway for pedestrian and vehicular ingress and egress to a portion of Lot 16. Grantors have no duty to maintain or to keep in repair said easement property.

5. A survey of the express easement is attached hereto.

the retaining wall and the trapezoidal express easement. The eastern portion of the disputed area is a rectangle beginning at the retaining wall and continuing to the lake, bordered by the property line with lot 16 and a line parallel thereto. Bouchard used the western portion of the disputed area as a driveway to access his house and to park vehicles. He used the eastern portion of the disputed area to store various watercraft, as a picnic area, and as access to the lake.

The parties disagree over whether there is an easement in the disputed area, and if so, the size of the easement; who may use the easement; how the easement may be used permissibly; and who is responsible for maintaining the easement.

### The Lawsuit

The circuit court described the origins of the suit as follows:

> In 2006 the Turners demanded that the [Bouchards] cease using the Disputed Area. According to the Turners, the Bouchards were not entitled to use these portions of the land that was located on lot 17 between the lot line and the retaining wall. When [Bouchard] continued his use of the Disputed Area, the Turners physically moved some of the blocks that composed a portion of the retaining wall into the middle of the Bouchard driveway, which they believed to be the true boundary line of the easement.

On April 16, 2007 Bouchard filed a complaint for declaratory judgment under Maryland Code (1973, 2006 Repl.Vol.), Courts & Judicial Proceedings Article § 3–406. Bouchard argued that he had established a prescriptive easement over the disputed area and asked the circuit court to declare as such and determine the rights and liabilities of the parties.

In an opinion filed on August 25, 2010, the circuit court found:

> [Bouchard], through a prescriptive easement, has the right to continue to use the Disputed Area. However, [Bouchard] cannot do anything that interferes with the Turners' use and enjoyment of the land. Beach access cannot be

blocked by either party. The Bouchards cannot store boats or other personal property on the portion of the prescriptive easement that extends beyond the retaining wall to the water. The Turners cannot construct a wall, fence, or any type of structure or impediment, which will prevent the Bouchards from being able to use or access the easement.

The Turners retain full ownership of the land within the easement on lot 17, but they are the servient owners and therefore cannot prevent the use of the easement by Mr. Bouchard. Likewise, Mr. Bouchard does not own the land subject to the easement and therefore cannot interfere with the Turners' use and enjoyment of the land. Neither side is to interfere with the beach access of the other.

In an attached order filed on the same day, the circuit court declared the extent of use and the prescriptive easement and the parties' various responsibilities for maintenance of the easement as follows:

FOUND, that [Bouchard] has an express easement over [Turner's] property, as described in the 1975 deed, and incorporated by reference in the 1980 and 1984 deeds conveying lot 17; and it is further

FOUND, that [Bouchard] has a prescriptive easement over the portion of lot 17, which lies between the concrete block wall and the property line between lots 16 and 17, and from the end of the block wall (in the center of the picture attached hereto) on lot 17 to the water's edge; and it is further

ORDERED, that [Bouchard] may use both his express easement and prescriptive easement for ingress and egress onto lot 16, parking cars, beach access, and for other activities that do not affect the use and enjoyment of the land owned by [Turner]; and it is further

ORDERED, that there is to be no storage of boats or other personal property on the portion of the easement on the water side of a line running from the end of the wall and running perpendicular to the lot line; and it is further

ORDERED, that the care and maintenance of the easement within the retaining wall is the responsibility of [Bouchard]; and it is further

ORDERED, that the care and maintenance of the easement from the bottom of the retaining wall to the water's edge is the responsibility of [Turner].

Turner filed timely an appeal to this Court on September 8, 2010.[6]

### DISCUSSION

An easement is a nonpossessory interest in the real property of another. An easement can be created expressly or by implication. One type of easement created by implication is an easement by prescription. *Jurgensen v. New Phoenix Atl. Condo. Council,* 380 Md. 106, 122–23, 843 A.2d 865 (2004) (internal quotation and citations omitted). To establish an easement by prescription a person must make an adverse, exclusive, and uninterrupted use of another's real property for twenty years. *Shuggars v. Brake,* 248 Md. 38, 45, 234 A.2d 752 (1967). As a general rule, a permissive use of another's land cannot ripen into a prescriptive easement. *Phillips v. Phillips,* 215 Md. 28, 33, 135 A.2d 849 (1957).

It is undisputed that Bouchard had an express easement over a portion of Turner's land for ingress and egress. The parties differ over whether Bouchard's use of the disputed area outside the express easement created a prescriptive easement over the disputed area. Enlargement by prescription of an express easement is rare. We note the following:

"The comparatively few cases which a comprehensive search has revealed as involving the point clearly indicate that where an easement is granted for use in a specified manner or for a specified purpose, an open and continuous use thereof, under a claim of right, for the prescriptive period

---

**6.** Neither party challenged on appeal the circuit court's adjudication of their rights to use or responsibilities to maintain the disputed area. Accordingly, we shall leave the circuit court's holding on that issue undisturbed. Md. Rule 8–131(a).

for purposes or in a manner beyond the scope of the grant, will create an easement of the larger scope by prescription, although in the majority of such cases the enlarged easement was held in fact not to arise because of a lack of the elements necessary to create it."

Annotation, *Enlargement of Easement by Use for Purpose or in a Manner Other Than That Specified in the Grant*, 110 A.L.R. 916 (1937). On review, we first address Turner's arguments as to the parties' burden of proving the prescriptive easement. Once the burden-shifting issue is resolved, we will review the circuit court's factual findings to see if they support the elements of a prescriptive easement.

## I. Standard of Review

Our review of the circuit court's order is governed by Rule 8–131(c), which provides:

When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witness.

"The clearly erroneous standard does not apply to the circuit court's legal conclusions, however, to which we accord no deference and which we review to determine whether they are legally correct." *Cattail Assocs. v. Sass*, 170 Md.App. 474, 486, 907 A.2d 828 (2006). Additionally, "discussing Maryland Rule 886, predecessor to Rule 8–131(c), the Court found that it is equally obvious that the clearly erroneous portion of [the] Rule [ ] does not apply to a trial court's determinations of legal questions or conclusions of law based upon findings of fact." *Garfink v. The Cloisters at Charles, Inc.*, 392 Md. 374, 383, 897 A.2d 206 (2006) (internal quotations and citations omitted)

The issue raised in this case, whether Bouchard's use of the disputed area established a prescriptive easement, is a legal question involving the interpretation of Maryland case law as it relates to prescriptive easements. Therefore,

we will review the issue *de novo.* *Banks v. Pusey,* 393 Md. 688, 696, 904 A.2d 448 (2006). In addition, whether the circuit court properly assigned the burden of proving the elements of a prescriptive easement is a question of law, and shall be reviewed *de novo.* Conversely, the circuit court's holding that Turner failed to carry the burden of showing a permissive use was a factual determination, and shall be reviewed under the clearly erroneous standard. *Mavromoustakos v. Padussis,* 112 Md.App. 59, 70, 74, 684 A.2d 51 (1996). Likewise, the circuit court's holding that the disputed area did not qualify for the so-called "woodlands exception" was a factual determination, and shall be reviewed under the clearly erroneous standard.

## II. Burden of Proof

Turner argues that the circuit court erred, for two reasons, in not assigning Bouchard the burden of proving that his use of the disputed area was adverse. First, Turner contends that because there is an express easement Bouchard's use of the disputed area was permissive. Therefore, Turner concludes, Bouchard must provide affirmative evidence of a change to an adverse use. Alternatively, Turner argues that lot 17 qualifies for the "woodlands exception," which is recognized in Maryland and would result in a presumption that Bouchard's use of the disputed area was permissive.

### A. Presumption of Adverse Use

Ordinarily, the person claiming a prescriptive easement bears the burden of showing that "it has had the character and is of the duration required by law." *Dalton v. Real Estate Imp'v't Co.,* 201 Md. 34, 41, 92 A.2d 585 (1952). "When a person has used a right of way openly, continuously, and without explanation for twenty years" it is fair to presume adverse use. *Kirby v. Hook,* 347 Md. 380, 392, 701 A.2d 397 (1997). In such a case, "[t]he burden then shifts to the [servient] landowner to show that the use was permissive." *Id.* The burden will not shift, however, if the use appears to

have been by permission. *Cox v. Forrest,* 60 Md. 74, 79 (1883). The Court of Appeals has explained:

> *Black's Law Dictionary* defines a "presumption" as "[a] legal inference or assumption that a fact exists, based on the known or proven existence of some other fact or group of facts." *Black's Law Dictionary* 1223 (8th ed. 2004). Logic dictates that a presumption of adverse use is created *only* when there is an absence of *any* evidence which would indicate that [the use was permissive]. Or, phrased another way, it is only when no appearance of permission permeates the record, that a presumption of adverse use will arise. In the absence of such a presumption of adverse use, the burden of establishing such use is on the party claiming it. This is supported by the general rule that the creation of an easement by prescription is not favored by the law. Herbert T. Tiffany, The Law of Real Property, § 793 (3d ed.1939, 2006 Supp.)

*Banks,* 393 Md. 688, 701, 904 A.2d 448 (other internal citations omitted).

Turner relies on *Feldstein v. Segall,* 198 Md. 285, 81 A.2d 610 (1951), for the proposition that Bouchard's use of the disputed area was permissive. There, Feldstein filed suit against Segall in the Circuit Court for Baltimore City to establish the widening by prescription to twenty-three feet of a ten foot right of way granted by deed. The circuit court allowed Feldstein's claim to a twenty-three foot right of way as to the southern portion of the claimed easement by prescription, and disallowed the claim as to the northern portion. The circuit court entered an order enjoining Segall from obstructing the southern portion of the expanded twenty-three foot right of way and the northern portion of the ten foot express right of way, and the parties filed cross-appeals.

The Court of Appeals reversed the judgment of the circuit court and dismissed the complaint. The Court recognized that an express easement may be widened by prescription, but cautioned that "use originally permissive or of right is presumed to continue, and there must be affirmative evidence of

change to adverse use." *Feldstein,* 198 Md. at 295, 81 A.2d 610. The Court held that Feldstein's use of the servient tenement was with permission of a prior owner of Segall's property, and was so miscellaneous and promiscuous that it could not be called either adverse or exclusive. In holding that Feldstein did not establish a widened easement by prescription, the Court concluded that to "acquire title by adverse possession to one's neighbor's property the evidence must show something more than bad manners and unneighborly conduct." *Id.* at 296, 81 A.2d 610. Thus, *Feldstein* is consistent with our observation at the outset that in most cases, an enlarged easement by prescription does not arise "because of a lack of the elements necessary to create it." *See* 110 A.L.R. 916.

Turner interprets *Feldstein* to stand for the propositions that: (1) an express easement cannot be enlarged by prescription unless the dominant tenant can show affirmative evidence of a change to adverse use; and (2) there is a heightened burden of proof between neighbors. As to the first proposition, *Feldstein* is distinguishable for two reasons. First, a previous owner of the servient estate gave the easement holders permission to cross his property. Only because the use was permissive did the burden shift to the easement holder to show affirmative evidence of a change to an adverse use. Second, the use of the servient tenement was so miscellaneous and promiscuous that it failed to meet the adverse or exclusive elements of a prescriptive easement. Under *Feldstein,* the mere existence of an express easement does not necessarily create a presumption that a use in excess of that express easement is permissive.

As to the second proposition, Turner's interpretation of the Court's statement that unneighborly conduct cannot support title by adverse possession is overly broad. In *Mavromoustakos v. Padussis,* a case involving a disputed prescriptive easement between adjacent property owners, we declined to adopt the approach of District of Columbia courts that "neighborly accommodation" is sufficient to rebut the

presumption of adverse use. 112 Md.App. 59, 68, 684 A.2d 51 (1996). We explained that the District of Columbia applies a different burden shifting scheme than Maryland:

> In Maryland, by contrast, in order to rebut the presumption of adverse use, the servient owner must do more than merely *present* evidence of permission—he or she must *prove* its existence by affirmative evidence. As in most civil actions, the claimant satisfies this requirement upon a showing that it is more likely than not that the land was used with permission or license. As previous cases have demonstrated, merely presenting "some evidence" of permission will not overcome the presumption of adversity in this State, as it would in the District of Columbia.

> In effect, once it is established that a presumption of adverse use applies in Maryland, the burden of persuasion shifts to the servient owner, and remains there.

*Mavromoustakos* and *Feldstein,* taken together, refute Turner's argument that there is a heightened burden of proof between neighbors. Instead, the cases stand for the proposition that evidence of a permissive use of the servient estate will not be overcome by allegations of neighborly accommodation. The circuit court interpreted *Feldstein* properly, and declined to view Bouchard's use of the disputed area as a permissive use merely because he had a smaller express easement. The circuit court found no other evidence that Bouchard's use of the disputed area was permissive. Therefore, the circuit court did not err in holding that it was Turner's burden to produce affirmative evidence to the contrary.

### B. Woodlands Exception

Turner argues next that the circuit court erred by not applying the "woodlands exception" to its analysis of the adverse element of a prescriptive easement. This exception, if applied, would lead to the presumption that Bouchard's use of the disputed area was permissive, thus making the burden his to prove that such use was adverse. In *Forrester v. Kiler,* 98 Md.App. 481, 633 A.2d 913 (1993), this Court summarized the

woodlands exception as follows: "[W]hen unenclosed and un-improved wildlands or woodlands are involved, the presump-tion is that the use was permissive, and the burden of proving that the use was adverse or under a claim of right is upon the one asserting these rights." *Id.* at 485, 633 A.2d 913. We looked to other states to explain the policy for such an exception, and concluded that without the woodlands excep-tion, "an owner could not allow his neighbor to pass and repass over a trail, upon his open, unenclosed land without danger of having an adverse title successfully set against him. Moreover, a landowner who quietly acquiesces in the use of a path, or road, across his uncultivated land, resulting in no injury to him, but in great convenience to his neighbor, ought not to have thereby lost his rights" *Id.* (internal quotations and citations omitted).

 The servient estate in *Forrester* was nearly a quarter mile from the nearest county road and consisted of eight acres of unenclosed wooded land. There, it was readily evident that the purported prescriptive easement crossed a dense forest in a general state of nature, and thus the burden-shifting excep-tion applied. Turner argues that the woodlands exception applies here because: the disputed area is not visible from Big Bear Lane; due to the hilly terrain, the disputed area is not visible from lot 17; lot 17 was not developed until 2005; and lot 17 is entirely wooded and contains patches that are densely vegetated. The circuit court disagreed. Lots 16 and 17 are quarter-acre parcels located in a subdivision with hundreds of other similar sized parcels. Both lots are improved with houses and driveways, as well as less formal clearings that are used as paths to access the lake. Though some portions of lot 17 have a steep terrain and contain un-trimmed vegetation, the disputed area itself is bounded by a retaining wall and has been cleared and maintained.

To determine whether the woodlands exception applied, the circuit court considered the testimony of witnesses, received photographs of the properties as exhibits, and visited the site to view the disputed area first hand. Our holding in the initial

woodlands exception case applies here: "Based on our review of the record, and on our understanding that in a bench trial it is the function of the trial judge to weigh conflicting evidence, we hold that his conclusion was not clearly erroneous." *Forrester*, 98 Md.App. at 489, 633 A.2d 913.

### III. Elements of Prescriptive Easements

 As the Court of Appeals stated in *Leekley v. Dewing*, 217 Md. 54, 59, 141 A.2d 696 (1958), "[r]egardless of whether the search for the character of the use starts with a presumption that it was adverse, the answer ultimately must be found from the strength of the proof in the particular case." 217 Md. at 59, 141 A.2d 696. Accordingly, we turn to the elements of a prescriptive easement. In its opinion, the circuit court stated:

A prescriptive easement was established in the land the Bouchards used because the Bouchards' use, beginning in 1984, exceeded the scope of the original 1975 easement. By exceeding the scope, the easement became one of implication, rather than permission. The implied easement was adverse to the servient estate owners, because it was not used with permission or license.... [T]he use was also exclusive and uninterrupted for the [twenty] year statutory period. Therefore, a prescriptive easement was created.

### A. Adverse

 Adverse use is established when the use is without license or permission. *Cox v. Forrest*, 60 Md. 74, 79 (1883). In determining whether a use is adverse, "the real point of distinction [is] between a permissive or tolerated user, and one which is claimed as a matter of right.... In other words, the use of a way over the lands of another whenever one sees fit, and without asking leave, is an *adverse* use, and the burden is upon the owner of the land, to show that the use of the way was by license or contract inconsistent with a claim of right" *Id.* at 79–80 (emphasis in original).

Turner argues that because there was an express easement over a portion of his property Bouchard's use of the disputed area was permissive. By that logic, any unauthorized use of a servient estate, even if unrelated to an easement located elsewhere on the property, would be permissive. Absent other evidence that Turner granted permission to Bouchard to use the disputed area, that argument must fail. "The owner of the dominant tenement is entitled to use the easement only in such manner as is fairly contemplated by his grant." *Miller v. Kirkpatrick*, 377 Md. 335, 350, 833 A.2d 536 (2003). Bouchard's use of the disputed area was in excess of the use granted by deed, as the deed did not grant use all the way to the retaining wall, or from the retaining wall to the lake. Land the original easement deed did not convey to Bouchard was retained by the Muths, ran with the land, and is now Turner's property. *Millson v. Laughlin*, 217 Md. 576, 585, 142 A.2d 810 (1958). Thus, the disputed area was Turner's property, and any use of it by Bouchard was adverse rather than permissive.

It was not until 2006 that Turner began to challenge Bouchard's use of the disputed area by putting up "No Trespassing" signs and using blocks from the retaining wall to define the boundary of the express easement. Prior to that date, Bouchard never asked permission to use the disputed area, and neither Turner nor his parents ever volunteered permission for such use. In fact, Bouchard testified that he believed the original grant of the express easement extended to the retaining wall. The failure to protest Bouchard's use of the disputed area by Turner or his parents was not permission, but acquiescence. *Dalton*, 201 Md. at 49–50, 92 A.2d 585 (noting that "*acquiescence* is the inactive status of quiescence or unqualified submission to the hostile claim of another, and is not to be confused with *permission*, which denotes a grant of permission in fact or a license.") (internal citation omitted) (emphasis in original).

The circuit court summarized its factual findings relating to adverse use as follows:

When use of the express easement began, the Bouchards immediately began to exceed the scope, because there was no permission to use the land from the easement to the retaining wall, and there was also no permission to use the land from the end of the retaining wall to the beach. All of this use was adverse and against the interest of the Turners.

The use was also visible to the Turners. The driveway that was created under the easement and used by the Bouchards was the only way for cars to access the Bouchards' garage. The driveway was used openly and nearly every day by the Bouchards or their tenants. The land extending from the end of the retaining wall to the water line was used by both parties for beach access. At any point while accessing the beach, the Turners would have seen the Bouchards were using the land for storing boats and picnics. All of this use was adverse to the Turners as it was without permission or license.

■■■ Turner challenges the circuit court's conclusion that he or his parents "would have seen" Bouchard's use of the disputed area. Turner argues that Bouchard failed to prove by direct evidence that Turner or his parents knew of Bouchard's adverse use. While the issue of whether Turner or his parents had actual notice of Bouchard's use of the disputed area is a relevant consideration, the alleged lack thereof does not negate the adverse requirement. The circuit court was entitled to draw inferences from the facts, and did so properly in concluding that the Turners would have seen Bouchard's use of the disputed area at some point during the statutory period.

As discussed, Turner's parents owned lot 18, which they used to store a small boat and access the lake. Bouchard testified that if the Turners ever launched their boat from lot 18 they would have passed Bouchard's property, and, upon doing so, would have seen Bouchard's open use of the disputed area as a storage space for his own boats. Further, Turner's parents' full-time home on lots 96 and 97 was a mere 100

yards from the driveway of lot 17. At any time during the statutory period they could have taken a short walk to inspect whether Bouchard's use of their property was within the scope of the express easement. Turner's mother did in fact visit lot 17 on at least one occasion in which she attempted to plant some trees to demarcate the boundary of the express easement. She returned later to find the trees dislodged by Bouchard's tenants—certainly an adverse action—but she did nothing to protest their destruction. The record supports the inference that Turner's parents were on notice of Bouchard's use of the disputed area, or in the alternative, that they had sufficient opportunity to learn of the use such that they should not be allowed to claim ignorance.

Turner contends that he had no notice of Bouchard's use of the disputed area because, due to the terrain on lot 17, he couldn't see the disputed area until he built a two story house on the property. Turner's indifference about inspecting his own property is difficult to comprehend. The case law does not support Turner's view that he can claim to be unaware of any adverse use of his property simply because such use was not visible from his bedroom window. Rather, the law has long favored and protected "those who are active and vigilant, and not those who are sluggards and who sleep on their rights." *Dickey v. Permanent Land Co.*, 63 Md. 170, 176 (1885).

As discussed, it was Turner's burden to produce affirmative evidence that Bouchard's use of the disputed area was permissive. Turner's contention that Bouchard's use was permissive solely by operation of the express easement is without merit. The record contains no other evidence to suggest that Bouchard or his tenants used the disputed area with permission. Turner's claim that he was unaware of Bouchard's use of the disputed area exceeds credulity. Accordingly, the circuit court was not clearly erroneous in holding that Bouchard's use of the disputed area was adverse.

## B. Exclusive

The exclusive requirement means "the claim of user must not depend on the claim of someone else." *Shug-*

*gars v. Brake*, 248 Md. 38, 45, 234 A.2d 752 (1966). "Even though a claimant may not have been the only user, it is sufficient if he used the way under a claim of right independently of others." *Id.* The circuit court held that Bouchard's use of the disputed area was exclusive because Bouchard "does not depend on the rights of anyone else in order to have the right to use the driveway and what [he] thought was [his] front yard." Cases that explore the exclusive requirement do so in the context of distinguishing a private use from a public use. *Id.; Cox*, 60 Md. at 80; *Furman E. Hendrix, Inc. v. Hanna*, 250 Md. 443, 446, 243 A.2d 600 (1968). Here, there is no evidence that the disputed area was used by the general public; only Bouchard and his tenants used the disputed area. Because there is no evidence in the record to suggest that Bouchard's use of the disputed area depended on the claim of anyone else, the circuit court held correctly that his use was exclusive. *See Mahoney v. Devonshire*, 86 Md.App. 624, 637, 587 A.2d 1146 (1991).

### C. Uninterrupted and Continuous For the Twenty Year Statutory Period

To be uninterrupted and continuous, the claimant need not use the right of way every day for the full twenty year period. *Cox*, 60 Md. at 80. Rather, the claimant must exercise the right

> more or less frequently, according to the nature of the use to which its enjoyment may be applied, and without objection on the part of the owner of the land, and under such circumstances as excludes the presumption of a voluntary abandonment on the part of the person claiming it.

*Cox*, 60 Md. at 80.

The first consideration is the point in time when Bouchard's use of the disputed area began to run for purposes of the twenty year statutory period. The Muths granted Bouchard the express easement in 1975 along with the title to lot 16, and Bouchard immediately began to exceed the scope of the

express easement. Bouchard's use of the disputed area was interrupted in 1980 when he gained an interest in lot 17. *Capron v. Greenway*, 74 Md. 289, 293, 22 A. 269 (1981). In 1984, Bouchard sold his interest in lot 17 to Turner's parents, and continued to exceed the scope of the express easement. Thus, for purposes of evaluating the statutory period, the operative year is 1984. Twenty-two years passed before Turner began protesting Bouchard's use of the disputed area in 2006, so the statutory period of twenty years has been satisfied. We look next to whether Bouchard's use was continuous and uninterrupted.

 Bouchard used lot 16 as a rental property from 1980 until 1999. He then spent a year fixing up the property and began to live there full time in 2000. The use of the disputed area by Bouchard's tenants and his own use of the disputed area may be combined and considered together as continuous use. The circuit court heard testimony that both Bouchard and his tenants used the disputed area to park vehicles and for access to the lake. The circuit court weighed the credibility of this testimony and found that such use was consistent with the nature of a right of way for ingress and egress and as a passage way to water access. To do so was not error.

## CONCLUSION

While the law may disfavor easements by prescription, that policy cannot be twisted to protect landowners who sleep on their rights. The presumption which arises from the unexplained use of the right of way for twenty years that the use was under a claim of right, has not been rebutted by any evidence. *See Cox*, 60 Md. at 79–80. Bouchard's use of the disputed area satisfied the adverse, exclusive, and continuous for the statutory period requirements of a prescriptive easement. Accordingly, the circuit court did not err in holding that Bouchard established a prescriptive easement over the disputed area. Because neither party challenged the circuit

court's adjudication of their rights and responsibilities regarding the disputed area, we leave that part of the order undisturbed.

**JUDGMENT OF THE CIRCUIT COURT FOR CALVERT COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

EXHIBIT